UNITED STATES of America,
Plaintiff-Appellee,

v.

Delores MALLORY and Calvin Eugene
Watson, Defendants-Appellants.

Nos. 71–1463, 71–1464.

United States Court of Appeals,
Tenth Circuit.

May 11, 1972.

Rehearing Denied in No. 71–1463
June 6, 1972.

**244**

Adrian M. Farver, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., Topeka, Kan., on the brief), for appellee.

John C. Humpage, Topeka, Kan., for appellant Mallory.

Wayne T. Stratton, Topeka, Kan., for appellant Watson.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Delores Mallory and Calvin Watson were tried jointly and convicted of robbing the Garden Bank Facility of the Fidelity State Bank and Trust Company in Topeka, Kansas, by force and violence. 18 U.S.C. §§ 2113(a), (d), 2.[1] They were each sentenced to ten years imprisonment.

The Garden Bank Facility of the Fidelity State Bank and Trust Company in Topeka, Kansas, was robbed of over $11,000 by three Negro males on December 11, 1970, about 11:35 a. m. Two witnesses saw the robbers leave the scene in a 1965 green Chevrolet with a black top. One of these witnesses saw the men abandon the Chevrolet and transfer to a blue car.

A customized maroon Cadillac El Dorado was seen leaving Topeka after the robbery. FBI agents observed it on the

---

1. 18 U.S.C. § 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more that $5,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(d) provides:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Kansas Turnpike being driven by a Negro woman with a male Negro passenger. This vehicle was stopped by Patrolman Genova about 12:50 p. m. for a driver's license check. Mallory was driving and Watson was seated on the passenger side. At about 1:00 p. m. FBI Agent Ault stopped the Cadillac in Kansas City, Missouri, after receiving a radio bulletin about the robbery and the car. Mallory was still driving. Watson was seated on the passenger side opposite her.

Agent Ault asked if the car belonged to Jimmy Willis. Mallory replied that it did. Mallory was questioned by Agent Ault and Watson was interviewed by another agent. Agent Ault asked for permission to look inside the car. Mallory said "Sure." He also asked for permission to look in the trunk. Mallory reacted by giving him the only key she had to the car. After Agent Ault tried the key to the trunk, he opened it by a button release in the glove compartment of the car. The search of the trunk disclosed the money stolen one and one-half hours earlier, two pistols, and two pillow cases. Mallory and Watson were arrested.

Testimony during the trial revealed that three stolen cars were used in the getaway in addition to the unique Cadillac El Dorado, i. e., a 1965 green Chevrolet with a black top, a 1966 Pontiac GTO and a 1967 Chevrolet sports car. Two witnesses employed at a filling station saw the Cadillac in the Holiday Inn parking lot on the morning of the robbery and other cars similar to the stolen vehicles going in and out of the lot, all being driven by Negroes. The witnesses saw the Cadillac driven from the lot by a Negro woman. Watson did not testify at the trial. None of the statements made by Watson at the scene of arrest were admitted in evidence at the trial.

Mallory testified during the trial that on the morning of December 11, 1970 she left home with her brother; that he left her at AG's between Bonner Springs and Kansas City at about 12:15–12:30 p. m.; that Watson met her about 12:30 p. m., at which time he was driving the Cadillac; that she drove him to Kansas City in Willis' Cadillac; that they were stopped at 12:50 p. m. on the day of the robbery by a local policeman and released; and that Agent Ault stopped them about 1:00 p. m. She stated that Agent Ault did not ask for permission to look in the trunk; that she handed him the ignition key; and that she said he could look in the glove compartment. She said she did not try to stop him from searching the trunk. After her arrest she told Agent Ault a different story, i. e., that Watson had picked her up at 9:00 in the morning; that they drove around all day; that she spent the previous night at a friend's house, etc. These contradictory statements were either denied by Mallory at the trial or she admitted making them but corrected them. The statements which she made to FBI Agent Ault were used by the Government to impeach her credibility.

Mallory and Watson each moved for separate trials which were denied by the trial court. The Court was meticulous in instructing the jury that neither the statements made by Mallory to FBI Agent Ault nor her testimony at trial could be considered in proving Watson's guilt.

Discounting the statements made by Mallory to FBI Agent Ault and her testimony at trial in relation to establishing Watson's guilt, a review of this record reflects that the only evidence which the jury could have considered in finding Watson guilty beyond a reasonable doubt was: (1) Watson's presence as a passenger in the vehicle being operated by Mallory in which the stolen money was recovered; (2) a witness said one of the robbers leaving the bank was black and had long sideburns and Watson fits this description; and (3) testimony of two witnesses that a vehicle similar to the Cadillac from which the stolen money was recovered was seen in the parking lot near the bank driven by a Negro woman on the morning of the robbery.

Mallory and Watson appealed individually but raised several mutual issues.

They allege error in the trial court's denial of: (1) their separate motions to suppress the evidence seized from the car; (2) their separate motions for severance; and (3) their separate motions for acquittal on the ground of insufficient evidence to sustain their convictions. Mallory separately contends that the trial court erred in denying her motion to dismiss the indictment. Watson separately asserts trial court error in: (1) allowing the Government to impeach Mallory by prior inconsistent statements containing incriminating references to him; (2) allowing FBI Agent Working to testify that the Cadillac in which he was a passenger when arrested is owned by *Jim Willis* and that it has been involved in other criminal acts; and (3) overruling his objection to the Government's closing argument.

## I.

 Watson and Mallory contend that their motions for acquittal should have been granted because there was insufficient evidence to make a prima facie case against them as aiders and abettors under 18 U.S.C. § 2. Aiding and abetting requires proof that the defendants assisted the perpetrator of the crime. White v. United States, 366 F.2d 474 (10th Cir.1966).

> "To be an aider and abettor requires that a defendant 'associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" Roth v. United States, 339 F.2d 863 (10th Cir.1964) at 865.

In deciding whether to grant a motion for acquittal, the trial court must consider the evidence in the light most favorable to the prosecution in determining whether there is substantial evidence from which a jury could find that the defendant is guilty beyond a reasonable doubt. United States v. Harris, 441 F.2d 1333 (10th Cir.1971); Speers v. United States, 387 F.2d 698 (10th Cir. 1967), cert. denied 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1968); Wall v. United States, 384 F.2d 758 (10th Cir. 1967).

Here the only direct evidence implicating Watson is that he was a passenger in the car when the stolen goods were found. Such is insufficient to impute possession of the stolen goods to him in the absence of other evidence. Goodwin v. United States, 121 U.S.App.D.C. 9, 347 F.2d 793 (1965), cert. denied 382 U.S. 920, 86 S.Ct. 300, 15 L.Ed.2d 234 (1965). Possession of the vehicle must be proven in order to support an inference of knowledge of the stolen property and participation in the theft. Yates v. United States, 362 F.2d 578 (10th Cir. 1966); Jenkins v. United States, 361 F. 2d 615 (10th Cir.1966); Barfield v. United States, 229 F.2d 936 (5th Cir. 1956).

The Court instructed the jury that a person operating a motor vehicle is normally the one in possession; that in the absence of other evidence, a passenger is not in possession of the vehicle or the items located therein; and that if possession is not satisfactorily explained, it is a circumstance from which the jury may reasonably draw an inference that the one in possession knew that the property found in the vehicle was stolen and participated in some day in the theft of the property. The trial court also instructed on the definitions of actual and constructive possession, advising that if the jury found actual or constructive possession of the stolen money attributable to either or both of the co-defendants, such finding would support the inference of knowledge and participation, supra.

 Watson pled not guilty. He did not testify. His presence in the car as a passenger an hour and one-half after the robbery is not sufficient to justify his guilt as an aider and abettor. Possession of the stolen money could not be imputed to him. Viewing the evidence in the light most favorable to the prosecution, we conclude that it was insufficient to establish Watson's guilt. His conviction must be reversed.

There was substantial evidence from which the jury could find that Mallory was in actual possession of the vehicle, that she knew the property was stolen, and that she participated in some way in the theft. Therefore, we will direct the balance of this opinion to Mallory's contentions on appeal.

## II.

Mallory alleges that the evidence seized from the Cadillac should have been suppressed. An evidentiary hearing on the motion was held and it was denied. The trial court concluded that Mallory had given effective consent to the search of the trunk of the car; that Watson had no standing to object to the search; that the FBI agent who stopped the vehicle had probable cause to believe that it contained stolen currency from Fidelity; that the search was lawful; and that the pistols and about $11,000 recovered were legally seized.

██ Mallory alleges that the FBI agent should have told her that she did not have to consent to the search and that she could insist on a search warrant. Her contention has no merit. Advice of the right to refuse permission to search without a search warrant is not a necessary predicate to the voluntariness of the consent. Leeper v. United States, 446 F.2d 281 (10th Cir.1971); White v. United States, 444 F.2d 724 (10th Cir. 1971); United States v. Goosbey, 419 F.2d 818 (6th Cir.1970).

██ The trial court found that Mallory's consent was freely given. There is substantial evidence in the record to support this finding. When Mallory handed Agent Ault the key to the ignition she thereby consented to a search of the entire car. Robinson v. United States, 325 F.2d 880 (5th Cir. 1964). The car was under her control; accordingly she could consent to a search which might incriminate her and/or someone else. Leeper v. United States, supra; United States v. Eldridge, 302 F.2d 463 (4th Cir.1962); United States v. Sferas, 210 F.2d 69 (7th Cir.1954),

cert. denied 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954).

██ Mallory alleges that there was no probable cause to stop the vehicle and search it. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the Court said:

". . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880.

Agent Ault was discharging a legitimate investigative function when he stopped the Cadillac and questioned the occupants. He knew that the getaway cars used in certain recent robberies included a 1969 Cadillac El Dorado, lavender or maroon in color, which was customized to look like a Mark III Lincoln Continental from the front and rear with a television antenna attached to the trunk lid bearing a license plate with the initials "JW"; that the Cadillac and an exact twin were owned by Jimmy Willis; that Jimmy Willis was black; that the Fidelity Bank had been robbed that same day at 11:35 a. m. by three black men; that the Cadillac was seen leaving Topeka minutes after the robbery; that the Cadillac was being driven toward Kansas City; and that the Cadillac was seen on the Kansas Turnpike being driven by a scoop nosed, bushy haired Negro female with a male passenger. These facts established the articulable cause Agent Ault needed to stop the car. Terry v. Ohio, supra; United States v. Miller, 452 F.2d 731 (10th Cir.1971); United States v. Sanchez, 450 F.2d 525 (10th Cir.1971); United States v. Self, 410 F. 2d 984 (10th Cir.1969). Probable cause was not required to support the stop of the car under Terry v. Ohio, supra. Probable cause was not required to justify the search in light of the voluntary consent given. Thomas v. United States, 154 F.2d 365 (10th Cir.1946); Ruhl v. United States, 148 F.2d 173 (10th Cir. 1945).

## III.

Mallory contends that her motion for severance should have been granted under Rule 14, Fed.R.Crim.P. Mallory alleges that she did not receive a fair trial because she could not call Watson as a witness. He elected not to testify.

The trial court has wide discretion in granting separate trials. Bailey v. United States, 410 F.2d 1209 (10th Cir.1969), cert. denied 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969); Long v. United States, 160 F.2d 706 (10th Cir.1947).

> "If it clearly appears however that a defendant will not receive a fair trial without a severance when all the circumstances are considered in the light of sound judicial discretion and common sense, then the severance must be granted." Baker v. United States, 329 F.2d 786, 787 (10th Cir.1964), cert. denied 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964).

The trial court did not abuse its discretion in denying a severance. The appellants asserted a unified defense. No prejudice is shown.

## IV.

Mallory contends that the indictment should have been dismissed, alleging a particularized need for the grand jury transcript: (1) to establish her contention that there was no competent evidence to support issuance of the indictment; and (2) to cross-examine the Government's witnesses for impeachment purposes.

In cases of particularized need, defense counsel may have access to relevant portions of grand jury testimony. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). However, there is no requirement that grand jury proceedings be recorded and when no record is made there is nothing to disclose. United States v. Goad, 426 F.2d 86 (10th Cir. 1970); Pinelli v. United States, 403 F. 2d 998 (10th Cir.1968), cert. denied 395 U.S. 968, 89 S.Ct. 2116, 23 L.Ed.2d 755 (1969); Edmondson v. United States,

402 F.2d 809 (10th Cir.1968). Since no record was made of the grand jury proceedings, the trial court properly overruled Mallory's motion to dismiss the indictment.

Mallory's conviction is affirmed. Watson's conviction is reversed and remanded with instructions that a judgment of acquittal be entered.