Lester IRBY, Appellant,

v.

UNITED STATES, Appellee.

Marcus DOZIER, Appellant,

v.

UNITED STATES, Appellee.

Burnetta A. COLES, Appellant,

v.

UNITED STATES, Appellee.

Paul J. COATES, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 7615–7617, 7628 and 7656.

District of Columbia Court of Appeals.

Argued Oct. 24, 1974.

Decided July 3, 1975.

Rufus King, III, Washington, D. C., appointed by this court, for appellant Irby.

Thomas W. Farquhar, Washington, D. C., appointed by this court, for appellant Dozier.

Arnold Jablon, Baltimore, Md., for appellant Coles.

Warren C. Nighswander, Washington, D. C., appointed by this court, for appellant Coates.

Raymond J. Coughlan, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, John T. Kotelly, Joseph F. McSorley and Albert H. Turkus, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

At approximately 2:00 a. m. on February 27, 1973, Kenneth A. McDermon was confronted by two men and a woman as he was walking from his car to his apartment at 535 Edgewood St., N.E. One of the men held a gun on McDermon as he was robbed of $40 and the leather coat he was wearing. The three assailants then fled the scene in a red or maroon automobile which had pulled up while the robbery was in progress. Appellants were subsequently tried on charges of armed robbery (D.C. Code 1973, §§ 22–2901, 22–3202) stemming from this incident. Appellants Irby and Dozier were charged in addition with carrying a pistol without a license (D.C. Code 1973, § 22–3204), and the government filed pretrial informations showing their prior convictions for weapons offenses. A jury convicted all four appellants of armed robbery. In addition, it found appellant Irby guilty of carrying a pistol without a license, and appellant Dozier innocent of that crime.[1]

Contentions advanced on appeal by some or all appellants are that there was no probable cause for arrest, thus the evidence seized at the time of the arrest should have been suppressed; that it was error to deny appellants' motions for judgments of acquittal because the prosecution's evidence was insufficient to show participation in an armed robbery; and that it was error to deny a requested jury instruction on the alleged lesser included offense of receiving stolen property. Contentions advanced individually are: Coles, that she was denied a hearing on her motion to suppress an unnecessarily suggestive lineup identification; Dozier, that his adjudication of contempt at the outset of trial was unwarranted; and Irby, that his concurrent sentence of one to three years for carrying a pistol without a license was not imposed in accordance with the statutory scheme of D. C.Code 1973, § 23–111.[2] With the excep-

---

1. The sentences imposed were: Coates, fifteen years to life; Coles, three to fifteen years; Dozier, six to eighteen years; and Irby, ten to thirty years for armed robbery and a concurrent term of one to three years for carrying a pistol without a license. In addition, Dozier received a sentence of sixty days for contempt of court, to run consecutively to the armed robbery sentence.

2. Coates originally challenged the trial court's refusal to issue a *writ of habeas corpus ad testificandum* for a witness in prison in Atlanta, Georgia, and its denial of a continuance to allow time for his arrival. He later withdrew these issues on appeal with the permission of the court.

tion of Irby's objection to his illegal sentence we find no prejudicial error and affirm.

## I

McDermon, the manager of a liquor store, testified that as he was coming home from work about 2:00 a. m. two men and a woman stopped him on the sidewalk to ask for a match. One man pulled out a gun and demanded his car keys. McDermon described this assailant as being about six feet tall, weighing 170 pounds, and wearing a black fur hat and a black fur coat. He later identified the man as appellant Lester Irby.

Irby gave the car keys to the woman, later identified by McDermon as appellant Coles, who proceeded to get into the wrong car. McDermon was able to see both Irby and Coles quite well during the entire period of the robbery (an estimated six minutes) due to the high intensity street lights. The second man who participated in the robbery stood behind McDermon and was not identified. McDermon testified that as the robbery was in progress an automobile drove up alongside the group and double-parked with the lights turned out. Irby then took McDermon's coat and money and the three assailants on the sidewalk got in the car and drove off. McDermon thought the car was a red or maroon Ford and was uncertain whether one or two persons were in the front seat when it drove up.

Officer Linville Wright testified that he telephoned McDermon's description of the robbers in to a police dispatcher. That description, as broadcast on a radio run at 2:23 a. m., was:

Attention all units robbery holdup occurred 15 minutes ago in the rear of 535 Edgewood Street, North East lookout for four Negro males and one Negro female . . . Number one subject is a Negro male six foot 175 pounds dark complexion wearing a black fur hat black fur coat armed with a dark revolv-

er . . . Number three and four Negro males same general . . . Number five Negro female no further . . . They obtained forty dollars and a brown leather coat last seen West on Edgewood towards Fourth in a burgandy color Ford no further information. . . . 2:23 [sic] [Appellant Irby's Brief, Appendix A.]

Officers David Belisle and Lewis T. Moore, traveling in separate scout cars, testified that they saw a car heading south on 14th St., N.W. at 2:50 a. m. which appeared to match the description given in the above lookout and a similar one that had been broadcast earlier. For this reason, Moore stated, he turned on his siren and brought the car over to the curb. Officer Belisle stated that he pulled his scout car in front of the stopped automobile and proceeded to the left rear of the car while Sgt. Moore was asking the driver, Irby, for identification. Belisle looked in the side window of the car with the aid of a flashlight and saw a brown leather coat and a black fur hat on the left rear floorboard. He informed still another officer who was standing at the rear of the vehicle of his observation and together the officers asked the occupants to step out of the car. Appellants were then searched and kept under guard. Officer Belisle seized the coat and hat from the back of the car and also recovered a starter pistol from under the driver's seat where Irby had been sitting. Officer Richard H. Gray, also present on the scene, testified that he recovered a .22 caliber automatic pistol from under the right front seat where Dozier had been sitting. McDermon testified that at about 3:30 a. m. the same morning he went to the precinct and identified the coat and the starter pistol found in the car as his. He stated that he had identified Irby and Coles in separate lineups after the robbery.

Against this background we review the contention that there was no probable cause to arrest, noting that appel-

lant Coles not only insists there was no probable cause to stop the automobile in which appellants were riding but also asserts that the arrest followed the search of the car when the officers requested appellants to get into the several police cars present at the scene. In so doing, we accept the validity of the government's argument that rather than an arrest,[3] the stop of the car in which appellants were riding was a legitimate investigatory stop to ascertain whether appellants were connected with a crime which the officers knew had taken place. Such an essentially reasonable procedure accords with reality and is sanctioned by the Supreme Court's reasoning in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and, more recently, in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In those cases it was recognized that it is undesirable and infeasible that police officers summarily arrest all persons who may superficially appear to fit lookouts or other descriptions they may have received without taking the time necessary to determine whether an arrest of an apprehended suspect is justified. Accordingly, while appellants were obviously not free to leave when the automobile was blocked by police cruisers, their brief detention for questioning did not rise to the level of an arrest. And contrary to the assertion of appellant Coles, it was unnecessary that probable cause exist for the officers to stop the car for questioning when their action, admittedly based on suspicion, was supported by "specific and articulable facts".[4]

■ Appellants were effectively under arrest when they were ordered from the car at gunpoint[5] with probable cause. As we have said, probable cause exists when a police officer has a reasonable belief that a crime has been committed and the person or persons being arrested committed it. *Bates v. United States*, D.C.App., 327 A.2d 542, 546 (1974). Here, the officers had received a citizen's complaint of a robbery, together with descriptions of the assailants and the car in which they escaped. The officers pulled a burgundy-colored 1966 Chrysler to the curb because it contained four persons, all blacks, one of whom was a woman; in short, because it matched in substantial part the description given in the radio run which they had received. Moreover, when they arrested the appellants the officers were also aware that the car contained the reported proceeds of the robbery. Clearly, then, there was probable cause to arrest the appellants as perpetrators of the completed crime and to seize the tangible evidence of that crime.

■ Coles nevertheless argues that she was not in fact arrested until after she was placed in a police vehicle and that the search of the car which preceded her arrest was illegal.[6] While the exact order of events is not clear, it appears that after Officer Belisle observed the coat and hat in the back of the car he ordered appellants out of the automobile. Six or eight police officers were present at the time, and the placing of appellants under guard, searching them, and searching the car were

---

3. *Coleman v. United States*, 137 U.S.App. D.C. 48, 59 n. 5, 420 F.2d 616, 627 n. 5 (1969) (Bazelon, C. J., concurring); *Bailey v. United States*, 128 U.S.App.D.C. 354, 363, 389 F.2d 305, 314 (1967) (Leventhal, J., concurring).

4. *Terry v. Ohio, supra* at 21, 88 S.Ct. 1868. *Accord, Stephenson v. United States*, D.C. App., 296 A.2d 606, 608–09 (1972), *cert. denied*, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed. 2d 197 (1973). Indeed, appellant Coles concedes in her brief that the police "stopped the car on suspicion" because of "information received over police radio".

5. "Whether there has been an arrest turns on whether there has been an imposition of custody, and this is a determination made after examining both the objective circumstances and the subjective feeling those circumstances are likely to evoke. . . ." [Citations omitted.] *Bailey v. United States, supra* note 3 at 363, 389 F.2d at 314 (Leventhal, J., concurring).

6. This argument would appear to pertain to the gun and the starter pistol only since the leather coat and fur hat were in plain view.

actions undertaken simultaneously by the different officers. In any event, it is settled that an actual arrest need not take place before the search of a vehicle or the immediately surrounding area if at the time probable cause to arrest exists. "Even if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun. . . ." [Citations omitted.] *Bailey v. United States*, 128 U.S.App.D.C. 354, 357, 389 F.2d 305, 308 (1967). And since, as we have held, probable cause to arrest existed here when appellants were ordered out of the car, the search was valid.

## II

As to the allegation that the trial court erred in denying the motions for judgment of acquittal, the oft-quoted rule is that only "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If [the trial judge] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. . . ." *Curley v. United States*, 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

▄▄ The evidence presented at trial, recited above, precluded the grant of a judgment of acquittal in this case. Indeed, it would be impossible to say on the record before us that there was no government evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.[7] McDermon's identification of Irby and Coles was positive.[8] In addition, there was strong circumstantial evidence against Coates and Coles. Both were apprehended while riding in the back seat of a car with one of the fruits of a robbery, a coat, present on the floor in front of Coates. And the settled rule is that where an accused is found in exclusive possession of recently stolen property and the possession is unexplained or unsatisfactorily explained, the trier of fact is allowed to infer that the accused participated in its theft. *Pendergrast v. United States*, 135 U.S. App.D.C. 20, 30–31, 416 F.2d 776, 786–87, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). The same is true of appellant Dozier who, while unidentified, was found in the front seat of the car in constructive possession of a fully operative pistol.

▄▄ Appellant Coates nevertheless insists that evidence of his apprehension an hour after a crime in a vehicle containing the proceeds of the robbery is insufficient to permit a jury to resolve the issue of his participation in the crime.[9] In support of this position he relies principally on *Goodwin v. United States*, 121 U.S.App.D.C. 9, 347 F.2d 793, *cert. denied*, 382 U.S. 920, 86 S.Ct. 298, 15 L.Ed.2d 234 (1965), and *United States v. Mallory*, 460 F.2d 243 (10th

7. *United States v. Cox*, U.S.App.D.C., 509 F.2d 390, 391 (1974).

8. The validity of the Coles identification is discussed *infra*.

9. Citing *Hill v. District of Columbia*, D.C. App., 264 A.2d 145, 147 (1970), Coates couples this contention with the argument that when the government relies solely upon circumstantial evidence to prove an essential element of a crime, that evidence will be adequate only when the one possible inference that can be drawn from it is that of guilt and thus, concomitantly, that the government must negate any reasonable inference consistent with innocence. As the principle enunciated in *Hill* has no application in this case, we need not reach its validity. The inference of guilt from the possession of recently stolen property is not an inference of one of the essential elements of the offense, "but only of the identity of the perpetrator of an offense independently proven." *United States v. Coggins*, 140 U.S.App.D.C. 134, 137, 433 F.2d 1357, 1360 (1970). The identity of the perpetrator of the crime is not part of the *corpus delecti* (*id.* at 140, 433 F.2d at 1363) and it was thus unnecessary for the government to shoulder evidentiary burdens beyond its usual ones of proving the elements of the crime and the identity of the criminal beyond a reasonable doubt.

Cir.), *cert. denied*, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972). In *Goodwin* one of four men caught in a getaway car an hour after a robbery was not identified by the complainant although the loot was found, undivided, in a bag in the car. The Court of Appeals declined to attribute possession of the stolen property to a passenger whom the complaining witness had not identified and reversed Goodwin's conviction for robbery. Similarly, in *Mallory* the conviction of a passenger in a car containing the proceeds of a bank robbery who was not identified as present at the scene was reversed because the court refused to impute possession of the stolen money to the passenger.

These cases, which we liken to our own in terms of a defendant's proximity in place and time to the crime when apprehended, turn not on these factors but on the fact of possession. In neither case was the reviewing court willing to impute either actual or constructive possession of the stolen goods to the unidentified passengers. Here, however, it was clear that Coates and Coles were in constructive, if not actual possession of at least a portion of the proceeds of the robbery, the leather coat, near which they were sitting and over which they could have exercised dominion and control.[10] Given that fact, and in light of all the government's evidence,

the jury was properly allowed to decide whether appellants' possession of the stolen articles was exclusive and, if so, to infer that appellants perpetrated the crime. Hence the motions for judgments of acquittal were properly denied.

### III

There is also an objection to the trial judge's refusal to instruct the jury on the purported lesser included offense of receiving stolen property. But a requirement for a lesser included offense instruction is that there be some evidence which could support a finding of guilt on that offense [11] and we agree with the trial judge that there was no basis for this conclusion in the record. Manifestly, a finding of guilt of the offense of receiving stolen property would have no reasonable support in the evidence here. Moreover, the two offenses are legally inconsistent. There is no inherent relationship between them and it obviously cannot be said that proof of robbery necessarily includes proof of receiving stolen property.[12]

### IV

Appellant Coles raises several issues relating to her identification by McDermon. On June 1, 1973, she filed a motion to sup-

---

10. The case of *United States v. Bethea*, 143 U.S.App.D.C. 68, 442 F.2d 790 (1971), on which appellant Coates also relies is thus distinguishable. There the question was whether narcotics discovered in a car in which appellant was seated were in his constructive possession. The court held that they were not since appellant was in the front seat, the narcotics had been secreted by a third person behind the back seat, this third person had dominion and control over them, and no common scheme or plan between appellant and the other persons in the car had been established. Moreover, *Bethea* involved prosecutions under 26 U.S.C. § 4704(a) for illegal sale and distribution of drugs and 21 U.S.C. § 174 for illegal concealment of drugs. (Both statutes were repealed as of 1971.) Under the

former, possession was the prime element that had to be proved to make out a prima facie case against a defendant. *Id.* at 70, 442 F.2d at 792. Under the latter proof of possession alone activated a presumption of guilt (*id.* at 69 n. 2, 442 F.2d at 791 n. 2), so that a more detailed showing of possession was required. *Bettis v. United States*, 408 F.2d 563, 568 (9th Cir. 1969).

11. *Fuller v. United States*, 132 U.S.App.D.C. 264, 294, 407 F.2d 1199, 1229 (1968) (*en banc*), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

12. *See United States v. Whitaker*, 144 U.S. App.D.C. 344, 447 F.2d 314 (1971), for the test of lesser included offenses.

press a lineup identification as unnecessarily suggestive, thereby tainting any in-court identification. She simultaneously filed a motion for extension of time in which to file the motion to suppress since Super.Ct. Cr.R. 47–I(c) had not been complied with. No hearing was ever held on either motion.[13]

■■■ Cases on point indicate that a timely motion is required to challenge a lineup identification on the constitutional ground of suggestivity.[14] The Rules of the Superior Court of the District of Columbia require that a motion to suppress evidence must generally be made before trial.[15] Super.Ct.Cr.R. 12(b)(3). The words "before trial" are refined further by Super.Ct.Cr.R. 47–I(c) which requires motions to be made within ten days of arraignment or entry of appearance of counsel. If the hearing on the motion is to occur less than five days before the date set for trial, the court's permission must be obtained and notice given to the government before the filing of the motion. Super.Ct.Cr.R. 47–I(d).

Here, appellant filed her motion on June 1 and trial was set for June 6. At the same time she filed a motion for extension of time to file based on the fact that she had not moved to suppress within the ten-day limit of R. 47–I(c) since the lineup was not held until May 30. She did not request a hearing within five days of trial as required by R. 47–I(d), however, nor did she do so on the day of trial when the court was reviewing and disposing of various pretrial matters. Had appellant prop-

erly pursued the procedure for a late filing, or had she made an oral motion on the day of the trial, an event for which the trial judge expressly afforded an opportunity, she might well have obtained a hearing by coming within the exceptions of R. 12(b)(3); viz, lack of opportunity or unawareness of grounds for the motion. She did neither, however, and thus cannot raise the issue of suggestivity here unless there was plain error in allowing the lineup identification in evidence.

■■■ A photograph of the lineup is before us. It was identified at trial and introduced into evidence without objection, and was the subject of thorough cross-examination by defense counsel. It contains nine persons, all of whom are young women dressed in casual attire and all of whom are black. The lineup is not in any way unnecessarily suggestive, let alone "conducive to irreparable mistaken identification"[16] which would, in the end, have to be appellant's showing.[17]

V

Immediately before the jury was sworn, but out of its presence, appellant Dozier was cited for contempt. Following an exchange in which the trial judge had ordered a codefendant to be quiet, Dozier spoke out three times saying that he wanted to represent himself. The trial judge then told him not to address the court unless he was given permission. Dozier continued to answer the court directly, even after a further warning. The trial judge

---

13. An extensive hearing on appellants' pretrial motion to suppress the physical evidence seized from the car had previously been held.

14. E. g., United States v. Allison, 414 F.2d 407, 409–10 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969).

15. Trial begins with the impanelling of the jury. Campbell v. United States, D.C.App., 295 A.2d 498, 500 (1972).

16. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

17. United States v. Williams, 152 U.S.App. D.C. 134, 137, 469 F.2d 540, 543, cert. denied, 409 U.S. 872, 93 S.Ct. 203, 34 L.Ed.2d 123 (1972).

then told Dozier to stand up and asked him if he had heard the warning. When he received no answer, the judge repeated the question. Dozier then replied, "Did I hear you say what?" Finally appellant admitted that he had heard the warning. He was then cited for contempt.

Super.Ct.Cr.R. 42(a) permits summary punishment for a contempt committed in the presence of the court. Where a defendant refuses to heed the admonitions of the court, his conduct may be adjudicated to be contemptuous. *In Re Ellis*, D.C.App., 264 A.2d 300, 301 (1970). Viewed in the light of the circumstances at the time as reflected in the record, we find no abuse of discretion in the trial judge's doing so here.

### VI

Appellant Irby contends that his concurrent sentence of one to three years for carrying a pistol without a license received under the recidivist sentencing procedure, D.C.Code 1973, §§ 22–104, 22–104a, is invalid because the trial judge did not advise him, as required by D.C.Code 1973, § 23–111, that he could only challenge previous convictions alleged by the prosecution before the pronouncement of sentence. The government admits that the trial judge did not inquire of appellant whether he affirmed or denied the previous convictions contained in the government's information. This omission alone serves to invalidate the sentence, and we remand the case as to Irby for resentencing on the carrying a pistol without a license count. *Smith v. United States*, D.C. App., 304 A.2d 28, 34, *cert. denied*, 414 U. S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973). In all other respects, the judgments of conviction appealed from are

*Affirmed.*