**UNITED STATES of America,
Appellant,**

v.

**Robert Lee WRIGHT, Jr., Appellee.**

**No. 77–1130.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1977.

Decided Nov. 7, 1977.

---

Alan H. Kirshen, Asst. U.S. Atty., Sioux City, Iowa (argued), Evan L. Hultman, U.S. Atty., on brief, for appellant.

Stanford J. Patterson, Waterloo, Iowa, for appellee.

Before LAY and ROSS, Circuit Judges, and MILLER, Judge.*

MILLER, Judge.

Robert Lee Wright, Jr., was convicted in federal district court [1] by a jury on all five counts of an indictment charging him with unlawful possession of a sawed-off shotgun. Prior to trial, he moved to suppress the testimony of all law enforcement officers and any contraband or evidence seized by them prior to, during, or subsequent to his arrest, arguing that there were no reasonable grounds for stopping him and that there was no probable cause for seizure of the weapon. The motion was denied, and Wright filed a motion to reconsider. Following the jury's verdict, the district court reconsidered its denial of the motion to suppress, reversed its previous position thereon, and granted Wright's motion for judgment of acquittal. Although the court rejected Wright's "no probable cause for seizure of the weapon" argument, it determined that the investigatory stop by two Waterloo police officers, Sgt. H. A. Hofmann and Patrolman Robert Erbes, was illegal, so that "the fruit of the resulting search" (the weapon) must fall.

---

* The Honorable Jack R. Miller, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Earlier he was acquitted in the District Court of Iowa in and for Black Hawk County on a charge of carrying a concealed weapon. However, the court found that there were reasonable grounds for an investigatory stop.

## FACTS

On June 15, 1976, at approximately 10:00 p.m., Officers Hofmann and Erbes were on routine patrol in a marked police car when they received a radio dispatch that a nearby gas station at 302 West 11th Street in Waterloo had just been robbed by two adult black males, one 5′ 11″ and the other a little taller, in possession of a long-barreled handgun. Both were last seen running east from the gas station toward the Cedar River.[2] An estimated six to eight minutes later and approximately eight blocks from the gas station, the officers noticed two men (later identified as Wright and Terry Bell), both black, standing about 150 feet away from the patrol car in a parking area in the vicinity of 11th and Mulberry Streets in a racially mixed part of the city. The lighting in the area was good, but the officers could not tell from their vantage point whether one of the men was taller than the other. One was wearing a long leather jacket, notwithstanding that it was a warm evening, which the officers regarded as unusual. The two men looked at the patrol car, faced each other as if conferring, then entered a Lincoln Continental parked nearby at the curb. Both officers testified that, at this point in time, they decided to stop the Lincoln Continental. As they slowly approached in the patrol car, the officers saw the auto (subsequently it was determined that Wright was driving) pull away from the curb, stop, back up to the curb, stop, pull forward again, and proceed down the road. (This maneuvering was not necessary to move the auto from the curb into the road.) Erbes, the driver of the patrol car, then stopped the auto for investigatory purposes by blocking its path with the patrol car.

Because of the armed robbery report and because of what the officers conceived to be "suspicious behavior"[3] on the part of the two men, Hofmann asked Wright for identification. Wright immediately got out of the car and appeared to be attempting to block Hofmann's view of the car's interior. However, Hofmann was able to look into the front seat, where he saw the handle of what he recognized to be a sawed-off shotgun protruding from the armrest. He reached into the car and seized the weapon. It does not appear that Wright and Bell were involved in the gas station robbery.

## OPINION

■ Citing *Terry v. Ohio*, 392 U.S. 1, 16, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the district court correctly stated the applicable law as follows:

> [W]henever a police officer accosts an individual and restrains his freedom, he has seized that person within the meaning of the Fourth Amendment. Certainly, less than a rigorous standard of probable cause is necessary to justify the initial intrusion. But the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant the intrusion. . . . The reasonableness of the stop must be viewed in light of the facts known to the officer *at the time of the stop*. [Emphasis supplied.]

However, we are persuaded that the district court failed to apply the law in concentrating on facts known to Officers Hofmann and Erbes *at the time of their initial deci-*

---

2. At this point in time, Hofmann testified that they were disposed to stop and check out any two Negro males "in the six foot area or taller."

3. The district court, in its original order denying the motion to suppress, indicated that the officers had noticed "furtive movement directed toward the center of the front seat" of the Lincoln Continental prior to its being stopped; whereas, in the order which is the subject of this appeal, the court states that the "furtive movement by the occupants" occurred after the stop. In his brief, Wright states that "while this [the forward-backward driving activity] was going on Mr. Wright was making what Officer Hofmann interpreted as 'furtive gestures' toward the middle of his car." Hofmann testified that prior to the stop he observed Wright turn sideways, with his right arm going up and down, doing something in between himself and Bell.

*sion to stop the Wright vehicle,* which was *prior* to their observation of the forward-backward driving activity[4] and, of course, *prior* to the investigatory stop itself. Moreover, the district court appears to have overlooked the admonition in *Terry, id.* at 21–22, 88 S.Ct. at 1880, that—

> [I]t is imperative that the facts be judged against an *objective standard* : would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action was appropriate? [Emphasis supplied.]

Instead of following this standard, the court merely expressed its own beliefs that the "purported suspicious nature of the conferral of Bell and Wright subsequent to their apparent recognition of the officer's patrol car . . . was facially innocuous"; and that it "does not seem likely" that Wright, upon observing a police car, "would drive alternately backward and forward seemingly for the purpose of attracting attention." Accordingly, the district court erred in concluding that "the only reason Robert Lee Wright, Jr. and his companion were stopped, and subsequently searched, was because they were two black males in an eight block radius vector extending east from the point of the gas station robbery," and that "the propriety of the investigatory stop here must stand or fall . . . on the propriety of conducting similar stops of any two blacks in the area."

As of the moment of the actual investigatory stop, the following "articulable facts" were available to the officers: at approximately 10:00 p.m., a radio dispatch had in-formed them, while on routine auto patrol, that a nearby gas station had just been robbed by two adult black males, one 5′ 11″ and the other a little taller, possessing a long-barreled handgun; they were last seen running in an easterly direction from the gas station; an estimated six to eight minutes later, the officers observed Wright and Bell, both black, standing about 150 feet away from the patrol car in a parking area located in a racially mixed part of the city within eight blocks of the gas station;[5] although the area was well-lighted, the officers could not tell whether one of them was taller than the other; although it was a warm evening, one of them was wearing a long leather jacket; Wright and Bell looked at the police car, faced each other as if conferring, then entered a Lincoln Continental parked nearby at the curb; as the officers approached in their car, the Lincoln Continental pulled away from the curb, stopped, backed up to the curb, stopped, pulled forward again, and proceeded down the road before being cut off and stopped by the police car; such forward-backward driving activity was not necessary to move from the curb into the road.

Applying the standard prescribed in *Terry, supra,* we hold that such facts, considered as a whole, warranted Hofmann and Erbes, as reasonable and cautious police officers guided by their training and experience, in making the investigatory stop.[6] *United States v. Collins, supra ; United States v. Hall,* 174 U.S.App.D.C. 13, 15, 525 F.2d 857, 859 (1976); *United States v. Wickizer,* 465 F.2d 1154 (8th Cir. 1972). *See United States v. Magda,* 547 F.2d 756, 758 (2d Cir. 1976) ("eleven years of police expe-

---

4. The district court said that it did not consider the forward-backward driving activity a reasonable ground for the stop because the officers had already made up their minds to make the stop; also, the court speculated that such driving activity "might very well have gone unnoticed" in the absence of such intent to make the stop.

5. The district court said that the fact that Wright and Bell were both black and were within eight blocks of the scene of the robbery "was certainly relevant but not sufficient." As this court noted in *United States v. Collins,* 532 F.2d 79, 82 (8th Cir.), *cert. denied,* 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 102 (1976), color of skin is an identifying factor.

6. Accordingly, we need not reach the Government's arguments that (1) Wright was collaterally estopped from moving to suppress because of an adverse decision on the identical search and seizure point in the earlier state court trial, and (2) even if the district court's ruling granting Wright's motion to suppress were allowed to stand, there was sufficient evidence to convict, so that the district court should have granted a new trial.

rience are not to be lightly brushed aside"). To paraphrase the Supreme Court's statement in *Terry, supra,* at 23, 88 S.Ct. at 1881: "It would have been poor police work indeed" for two officers with eighteen years' combined experience to have failed to make the investigatory stop.

■ The district court was clearly correct in rejecting Wright's "no probable cause for seizure of the weapon" argument.

The order granting both Wright's motion to suppress and his motion for judgment of acquittal is vacated, the judgment of acquittal is reversed, the jury's verdict is reinstated, and the case is remanded for sentencing.[7]

**7.** We note that our decision does not involve double jeopardy. *See United States v. Martin* *Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977).