370 So.2d 428 (1979)
STATE of Florida, Appellant,
v.
Leon GAMBLE, Appellee.
Nos. 78-1541, 78-1549.
District Court of Appeal of Florida, Third District.
May 1, 1979.
*429 Janet Reno, State's Atty., and Milton Robbins, Asst. State's Atty., for appellant.
Bennett H. Brummer, Public Defender and Karen M. Gottlieb, Asst. Public Defender, for appellee.
Before PEARSON, HENDRY and KEHOE, JJ.
KEHOE, Judge.
Appellant, State of Florida, brings these consolidated appeals from orders entered by the trial court granting appellee's, defendant below, motions to suppress certain evidence and statements. We reverse.
The pertinent facts in regard to these motions may be summarized as follows: In the early morning of January 23, 1978, the Dade County Department of Public Safety (P.S.D.) broadcast a call that a burglary was in progress at 6757 Southwest 88th Street. As police units responded to the call, it was changed to a robbery with screams for help. Officer Merit arrived at the scene; got out of his police car, drew his service revolver, and ordered a person who was fleeing the scene to stop. The suspect put up his hands on a car and froze; as the suspect did so, the officer heard a "clanging" sound. As the officer walked around the car to take custody of the suspect, the officer saw a twenty-two caliber rifle lying on the ground about four feet from where the suspect was standing. During this time, several other police cars arrived at the scene. Officer Merit asked the suspect, who was subsequently determined to be a juvenile, who was with him; the suspect gave the officer some names. The officer asked for a description of the persons, if they were in a car and, if so, what type. The suspect said the were in an old Cadillac, either dark black or green. (Officer Merit did not recall at the hearing on the motion whether the suspect had given him two or three names.) The suspect further stated that the men were heading toward Perrine which was south of their present location. As officer Merit got each of these items of information, he relayed them to Sgt. Greenberg who was broadcasting a be on the lookout for (BOLO) over the radio. Officer Cokl, another P.S.D. officer heading for the scene of the robbery, heard the BOLO; at this time he was approximately two to three blocks southwest of the location of the robbery. Officer Cokl testified that it was approximately two minutes after hearing the robbery call that he heard the BOLO. At this time, officer Cokl saw an old green Cadillac passing on the street in front of him; the car was occupied by two persons, including appellee Leon Gamble. Officer Cokl stopped the car, got the men out and patted them down for weapons, and then called over his radio for additional information about the description of the persons involved in the robbery. The description which he received of one person matched that of appellee's companion; however, the other description did not match either of the two men. Officer Cokl then looked into the car and saw some stereo equipment on the back seat. The *430 officer then radioed to ask if any stereo equipment had been taken during the robbery; he was informed that there had been. The officer then advised the two men of their Miranda rights, handcuffed them, and transported them, along with the stereo equipment, to the parking lot of the apartment lot where the crime occurred. The victim identified appellee's companion and identified the stereo equipment as belonging to him. At the hearing on appellant's motions to suppress, Detective Harold Ross, P.S.D., testified that he was the lead investigator assigned to this case. Thereafter, at the police station, Ross read appellee his Miranda rights. Appellee read along with the detective from the constitutional warning interrogation form and then he initialed each right after it was read. Appellee then underlined the portion of the form indicating that he did not want an attorney at that time. Appellee then signed and dated the form, including the time of the day. Appellee then stated that he was aware the robbery was to have taken place, but that he didn't know where or who the victim was to have been. Appellee further stated that he was told by his companions to wait at a certain location, that they would return, and that he would drive them away. These statements were given approximately four hours after the crime occurred.
Pursuant to appellee's motions to suppress certain evidence, i.e., the stereo equipment discussed above, and to suppress his statements, the trial court entered orders suppressing both the evidence and the statements. From these orders appellant appeals.
Appellant's contentions on appeal are basically (1) that the stop of appellee was legal, and (2) that the statements given by the appellee, pursuant to a lawful stop and the appropriate Miranda warnings, were also legal.
The trial court in its order granting appellee's motion to suppress the evidence stated that "there was not [a] sufficient reason or basis to form a well founded suspicion to give rise to the initial stop, seizure, and arrest." Our review of the record leads us to respectfully disagree with the trial court.
Our courts have consistently held that the police may temporarily stop an automobile on less than probable cause where there is an articulable suspicion that a criminal offense has been, is being, or is about to be committed. However, to lawfully do so, in the absence of probable cause, the police are governed by the basis principles set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Section 901.151, Florida Statutes (1977). In effect, it is required that the police have a founded or reasonable suspicion, predicated upon some factual basis, which requires further investigation. See, e.g., State v. Price, 363 So.2d 1102 (Fla. 2d DCA 1978); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978); Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976); and State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974). It is the application of these principles to the instant case whereby we reach a different conclusion than the trial court.
In this case, the officer who stopped appellee was answering a call to the robbery scene. When he was approximately two to three blocks from the scene, he received a BOLO on his police radio from other P.S.D. officers broadcasting from the scene of the crime by relaying information received from a captured suspect. This BOLO contained information in regard to a description of the car involved in the crime, its occupants, and the direction of travel. Further, after receiving the BOLO and seeing the green Cadillac, the officer was aware of its location in regard to the crime scene and the timing of the sequence of events. Also, it was approximately 1:30 a.m. in the morning. Based upon these facts and circumstances, interpreted in the light of the officer's knowledge, we believe that under the authorities set forth above the officer had a "founded suspicion" predicated upon a sufficient factual basis to properly justify his stop of appellee. After this lawful stop and the accompanying investigation, the officer observed in plain view in the car the stereo equipment which was suppressed in the trial court's order. Based *431 upon his investigation and the additional information received over the police radio in regard to the description of the perpetrators of the robbery and the items stolen, the officer handcuffed appellee and drove him to the scene of the robbery where the stolen items were identified. In our opinion, the ensuing stop of appellee, the plain sight observation of the stereo equipment, and the arrest of appellee were legally proper. See, e.g., Smith v. State, 167 So.2d 225 (Fla. 1964); Brown v. State, 91 So.2d 175 (Fla. 1956); Jackson v. State, 192 So.2d 78 (Fla. 3d DCA 1966); Gibson v. State, 180 So.2d 685 (Fla. 3d DCA 1965); and Gray v. State, 177 So.2d 868 (Fla. 3d DCA 1966).
After determining that the initial stop, detention, and arrest of appellee were illegal and entering an order suppressing the evidence, i.e., the stereo equipment, the trial court then found, in a separate order, that the statements made by appellee subsequent to his arrest should be excluded under the fruit of the poisonous tree doctrine. Because we have determined, as set forth above, that the stop, detention, and arrest of appellee were legal, this doctrine is inapplicable in the instant case.
Accordingly, for the reasons set forth herein, the orders appealed must be reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded.