371 So.2d 1074 (1979)
The STATE of Florida, Appellant,
v.
Veronica WILLIAMS, Appellee.
No. 78-1718.
District Court of Appeal of Florida, Third District.
June 12, 1979.
*1075 Janet Reno, State's Atty., and Ira N. Loewy, Asst. State's Atty., for appellant.
Bennett H. Brummer, Public Defender and Bruce Rosenthal, Asst. Public Defender, for appellee.
Before HAVERFIELD, C.J., and PEARSON and SCHWARTZ, JJ.
SCHWARTZ, Judge.
This case, which is an appeal by the state from an order suppressing a firearm seized from the defendant-appellee, involves an interplay of the issues addressed in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979) and Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). We hold that a "tip" to a police officer concerning the possible presence of a gun which did not contain sufficient "indicia of reliability" to support any greater restriction of a person's liberty, did justify the "de minimus" intrusion involved in ordering a passenger out of an already stopped car. The order below, which was based upon the trial judge's contrary conclusion, is therefore reversed.
Since the trial court granted the motion to suppress, the record must be viewed in the light most favorable to the successful movant, the defendant, with all conflicts in the evidence resolved in her favor. State v. Nova, 361 So.2d 411 (Fla. 1978). Treated in that manner, the record demonstrates that on February 16, 1978, Public Safety Department police officer James Ferrante responded to a disturbance call "possibly involving an automobile accident," at 3063 N.W. 55th Street in Miami. When he arrived at the scene, Ferrante was approached by a man who was entirely unknown to him at the time, but who was later identified as Jerry Bridges. Bridges told Ferrante, "[m]y brother thought there was a gun in the car." The officer thereupon approached the vehicle indicated by Bridges, which was stationary at the side of the street, and ordered the three or four occupants of the vehicle to get out of the car. The appellee, Veronica Williams, who was seated in the rear, obeyed the officer's command. As she exited the car, she began to walk hurriedly away from the officer, carrying a white sweater in front of her body, wrapped like a bundle. Ferrante ordered her to stop. When she turned around, he saw a black object which looked like the barrel of a gun wrapped underneath the sweater. He reached out, grabbed the sweater, and found a .32 automatic pistol. Williams was charged with carrying a concealed firearm. The defendant has not challenged, either in the trial court or in this one, the propriety of Ferrante's conduct after Williams emerged from the car; that is, in stopping her and seizing the weapon.[1] She contends only that, because of the at best amorphous nature of the information given by Bridges to the officer, he was not justified in ordering her to leave the vehicle. In granting the motion to suppress the firearm, the trial judge agreed with this contention, but we do not.
The coexistence of two factors is responsible for this conclusion: (a) the action taken by the officer as a result of the information given him consisted only of an order to the occupants to get out of the car; and (b) that information, such as it was, concerned the possible presence of a gun. Two recent and extremely able decisions of our sibling courts for the second and fourth districts, State v. Hetland, supra, and Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979), have explored the question of when a tip given a police officer contains sufficient indications of reliability to justify a stop and frisk. *1076 See also State v. Gamble, 370 So.2d 428 (Fla. 3d DCA 1979). If these were the criteria applicable to the case at bar, we might readily agree with the defendant's position that the content of Bridges' statement to Ferrante does not meet them. It consisted only of a hearsay report about what an unknown informant, his brother, merely "thought" was in the car. Such a statement, even though it involved a firearm, would not serve to raise the "founded suspicion" of criminal activity which would constitutionally support a subsequent stop. E.g., United States v. McLeroy, 584 F.2d 746 (5th Cir.1978). But no such stop is involved in this case. The vehicle and the occupant in question here were already "stopped," or at least stationary, for reasons unrelated to police activity. In Pennsylvania v. Mimms, supra, the Supreme Court of the United States clearly and specifically held that very different and much more lenient standards are applicable in determining the propriety of the only police action which is challenged here  the act of ordering one out of a vehicle. In Mimms, the court held that a police officer, with no indication of unlawful activity whatever, could validly order a driver who had been properly stopped for a mere traffic violation to exit his vehicle. The court variously characterized that action as "de minimus," as one which "hardly rises to the level of a `petty indignity'" and as "at most a mere inconvenience [which] cannot prevail against legitimate concerns for the officer's safety." 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337.[2]
The "legitimate concerns for the officer's safety," to which the court referred, primarily involve the risks arising from the use of firearms. The court stated at 434 U.S. 110, 98 S.Ct. 333, 54 L.Ed.2d 336-337:
"We think it too plain for argument that the State's proffered justification  the safety of the officer  is both legitimate and weighty. `Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' Terry v. Ohio, supra, 392 U.S. at 23, 88 S.Ct. 1861, [20 L.Ed.2d 889,] [44 Ohio Ops.2d 383.] And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. `According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings  A Tactical Evaluation. 54 J. Crim LC & PS 93 (1963). ' Adams v. Williams, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972)."
Mimms held that even this generalized concern for an officer's safety  without any evidence of danger involved in the particular case  was sufficient to justify the "minor inconvenience" of requiring every driver stopped for a traffic violation to get out of his car. There is all the more reason, it seems to us, for vindicating that concern when, as in this case, there is a legitimate reason for actually believing the risk to exist in a particular situation. Because of the risks obviously presented to investigating officers, it has been widely recognized that reports which concern the existence of dangerous weapons are, at least, treated with less rigor than ones involving other possible offenses. See Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979).[3] Applying these principles to the specific question before us, we hold that a report concerning a firearm in a vehicle which is not plainly without foundation on its face, is sufficient *1077 to justify ordering the occupants to leave the car. Since the information given by Bridges, an apparently concerned individual with some knowledge of the surrounding circumstances, was sufficient to meet this admittedly inexacting standard, Ferrante's action was constitutionally permissible and the firearm was therefore erroneously suppressed.
The order below is reversed and the cause remanded with directions to deny the motion to suppress.
Reversed and remanded.
NOTES
[1] That concession is well justified by the applicable cases as to an officer's right to "stop and frisk" for dangerous weapons. E.g., Pennsylvania v. Mimms, supra; Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Marcinowski, 371 So.2d 144, (Fla. 2d DCA 1979); State v. Hetland, supra, and cases cited, State v. Francois, 355 So.2d 127 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 832 (Fla. 1978); see Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979).
[2] Because the supreme court focused upon the minimal intrusion into one's liberty involved in requiring him only to get out of a car, we believe that Mimms is controlling although, unlike the situation in that case, the car was stopped for reasons unrelated to law enforcement, and the defendant before us was a passenger rather than the driver of the car. See also Foley v. Connelie, 435 U.S. 291, 298, 98 S.Ct. 1067, 1071, 55 L.Ed.2d 287, 293 (1978) (dictum); but see State v. Williams, 366 So.2d 135, 1374 (La. 1978).
[3] We need not speculate on the question of whether an "unreliable" report of other criminal activity would justify a command to exit the vehicle. See Pennsylvania v. Mimms, supra, at 434 U.S. 110-111, 98 S.Ct. 330, 54 L.Ed.2d 336-337, nn. 5-6.