374 So.2d 1151 (1979)
Gary FRANKLIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-1871.
District Court of Appeal of Florida, Third District.
September 18, 1979.
*1152 Weinstein & Krasnow and Mark Krasnow, Miami Beach, for appellant.
Jim Smith, Atty. Gen. and James H. Greason, Asst. Atty. Gen., for appellee.
Before HENDRY, KEHOE and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The appellant Franklin pled nolo contendere to charges of robbery and the possession of a firearm during the commission of a felony, reserving the right to challenge the denial of his motion to suppress the fruits of the police stop of the vehicle in which he was leaving the scene of the offense.[1] Since we agree with the trial judge's conclusion that the stop was properly based upon a "founded or reasonable suspicion" of criminal activity, we affirm the judgment under review.
Viewed in the light most favorable to the state, the successful opponent of the motion below, State v. Williams, 371 So.2d 1074, 1075 (Fla. 3d DCA 1979), the record demonstrates that at approximately 11:00 p.m. on April 23, 1978, officer John Murphy of the Miami Beach police department received a BOLO (be on the lookout report) over his car radio. The BOLO contained the information  the source of which was later shown to have been the victim  that a robbery had just occurred in the vicinity of Wolfie's Restaurant on 21st Street in Miami Beach and that three black males, one of whom had pigtails, were running west on 21st Street. Police department practice required that upon the report of a serious crime in Miami Beach, the city, which is essentially an island, is to be sealed off by stationing police cars at the four primary exits to the mainland. In accordance with that policy, Murphy positioned his unmarked vehicle at the entrance to the MacArthur Causeway at 5th Street and Alton Road, which is approximately 25 blocks and five-to-ten minutes in driving time away from the scene of the reported incident. About ten minutes after the broadcast of the BOLO, Murphy, who by then had received the additional information that the offenders were in their early twenties, saw the car in question proceeding, in an unremarkable manner, onto the causeway away from the Beach towards the City of Miami. It was occupied by four black males who appeared to be in their early twenties; one of the passengers (the appellant) had pigtails. Murphy, based on a suspicion that those in the car were involved in the robbery, pulled it over, and, after discovering a gun in the rear seat, placed Franklin and the others under arrest.
Because all of the evidence sought to be suppressed stemmed from the initial stop and it is admitted by the appellant that there was no impropriety thereafter, the sole issue at the hearing on the motion to suppress below, and on this appeal which challenges its denial, is whether that stop was constitutionally permissible. As both parties agree, that issue, in turn, is dependent entirely on the question of whether Murphy's suspicion of the car's occupants was a "founded" or "reasonable" one so as to justify the temporary detention under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Sec. 901.151, Fla. Stat. (1977). We find no error in the trial court's determination that, under all the circumstances, it was.
As then-Judge Alderman wrote in the leading case of State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978):
To justify temporary detention, only `founded suspicion' in the mind of the detaining officer is required. Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976); State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974); State v. Ebert, 251 So.2d 38 (Fla. 2d DCA 1971). A `founded suspicion' *1153 is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge.
As was held in Terry v. Ohio, supra, at 392 U.S. 21, 88 S.Ct. 1880, 20 L.Ed.2d 906:
"... [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."
In our view, the stop of the appellant's car was fully justified under these standards.
It should be emphasized, as the Fourth District did in Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979), that the situation before us, which involves the report of a specific offense, is to be sharply distinguished from cases like Stevens, supra, and Mullins v. State, 366 So.2d 1162 (Fla. 1978) where stops were made in the investigation of generalized, allegedly suspicious activity. Compare, e.g., Lachs v. State, supra, with Hall v. State, 366 So.2d 865 (Fla. 4th DCA 1979), and United States v. Collins, 532 F.2d 79 (8th Cir.1976), cert. denied, 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 102 (1976) with United States v. Nicholas, 448 F.2d 622 (8th Cir.1971). Thus the issue before us is a very narrow one: whether there was an objective, articulable basis for Murphy to believe, as he did, that the occupants of the vehicle he stopped might have been involved in the robbery. In the consideration of that issue, it is now well-settled in Florida that an officer is entitled to rely upon the contents of a BOLO, when, as here where the victim himself made the original report, the source of the information it contains is deemed reliable. Lachs v. State, supra; State v. Gamble, 370 So.2d 428 (Fla. 3d DCA 1979); State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), and cases cited; see United States v. Skinner, 412 F.2d 98 (8th Cir.1969), cert. denied. 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969); Klingler v. United States, 409 F.2d 299 (8th Cir.1969), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). In this case, the facts observed by the officers were, objectively and articulably, so consistent with the circumstances of the reported crime as to constitute a "reasonable" or "founded" basis for suspicion:
(a) The car was seen both at a time and distance from the event which were entirely consistent with an attempt by the perpetrators to flee from the Beach to the mainland by one of the few routes available for that purpose. See Lachs v. State, supra.
(b) The description of the three passengers in the vehicle fit that of those who had allegedly committed the crime: they were black, and in their early twenties, and one had an unusual pigtail hair style.
(c) It is of course true that the BOLO described three persons on foot, while the officer saw four in a car. Nevertheless, drawing "rational inferences from [the] facts," Terry v. Ohio, supra, "in the light of [his expert] knowledge" and experience, State v. Stevens, supra, at 354 So.2d 1244, Murphy could come to the unquestionably reasonable conclusion that the three persons on foot had joined a fourth "wheel man" in order to make their escape from the scene of the crime.
Thus we conclude that while "probable cause" may not have existed, "reasonable suspicion" did.
Several federal cases lend particular support to this determination. United States v. Mallory, 460 F.2d 243 (10th Cir.1972), cert. denied, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); United States v. Collins, supra; United States v. Wright, 565 F.2d 486 (8th Cir.1977), cert. denied, 435 U.S. 974, 98 S.Ct. 1621, 56 L.Ed.2d 67 (1978); see also United States v. Fallis, 414 F.2d 772 (9th Cir.1969). In Mallory, the BOLO in question described a robbery perpetrated by three black males; yet the court upheld, as justified by all the circumstances, the stop of a vehicle driven by a female and containing but one black male passenger. Similarly, the Collins case validated the stop of a single driver, alone in the car, soon after three black males were *1154 reported to have left the scene of a bank hold-up. The Wright decision upheld the stop of two men (who incidentally turned out not to have been involved in the reported crime) on facts, as described at 565 F.2d 489, which were far weaker than those involved in this case:
As of the moment of the actual investigatory stop, the following `articulable facts' were available to the officers: at approximately 10:00 p.m., a radio dispatch had informed them, while on routine auto patrol, that a nearby gas station had just been robbed by two adult black males, one 5'11" and the other a little taller, possessing a long-barreled handgun; they were last seen running in an easterly direction from the gas station; an estimated six to eight minutes later, the officers observed Wright and Bell, both black, standing about 150 feet away from the patrol car in a parking area located in a racially mixed part of the city within eight blocks of the gas station; although the area was well-lighted, the officers could not tell whether one of them was taller than the other; although it was a warm evening, one of them was wearing a long leather jacket; Wright and Bell looked at the police car, faced each other as if conferring, then entered a Lincoln Continental parked nearby at the curb; as the officers approached in their car, the Lincoln Continental pulled away from the curb, stopped, backed up to the curb, stopped, pulled forward again, and proceeded down the road before being cut off and stopped by the police car; such forward-backward driving activity was not necessary to move from the curb into the road.
We are sensitive and must respond to, but do not agree with the earnest contention of the appellant that a decision upholding this stop would justify an interference with the liberty of any four young black men on Miami Beach, based solely on their race. But see Lachs v. State, supra. We note that Miami Beach is now a racially mixed area. Under such circumstances, the race of the persons to be stopped, while obviously not sufficient in itself, is simply a characteristic which may properly be used as one element of identification. As the court stated in Collins, supra, at 532 F.2d 82:
"... the color of a person's skin, be it black or white, is an identifying factor which, while insufficient by itself, assists the police in narrowing the scope of their identification procedure. See United States v. Brignoni-Ponce, 422 U.S. 873, 855-886, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 619 (1975)."
If, in this case, the race of those both described and apprehended were caucasian or oriental, rather than black  and all the other circumstances were identical  there is no doubt but that the same result would follow.
Affirmed.
NOTES
[1] The motion sought to suppress virtually all the evidence against the defendant, including the gun in question, which was found in the car and the victim's identification of Franklin at a "show-up" to which he was taken after the stop of the vehicle. We therefore conclude  in agreement with the position of both parties as presented in supplemental briefs submitted on the issue after oral argument  that the motion to suppress was dispositive of the case so as to permit the review of its denial on a nolo plea under Brown v. State (Fla. 1979) (Case No. 53,782, opinion filed, June 14, 1979).