375 So.2d 1112 (1979)
William Woodrow HORTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-2184.
District Court of Appeal of Florida, Third District.
September 25, 1979.
Rehearing Denied November 9, 1979.
Alvin Entin and Ronald A. Dion, Miami, Manuel W. James, Key West, for appellant.
Jim Smith, Atty. Gen. and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
Before PEARSON, BARKDULL and SCHWARTZ, JJ.
PEARSON, Judge.
The appellant was charged with possession of more than 100 pounds of marijuana. He filed a motion to suppress the physical evidence, which was denied. Thereupon, he changed his plea to nolo contendere, reserving the right to appeal. The controlling question is whether the facts developed by the State at the hearing on the motion to suppress, when viewed in the light most favorable to the decision of the finder of fact, support the decision of the trial court that the officers, who stopped a truck the appellant was driving, had an "articulable basis for suspicion" that a crime had been committed, or was in the process of being committed, or would be committed in the imminent future. See Parker v. State, 363 So.2d 383 (Fla. 3d DCA 1978); and State v. Payton, 344 So.2d 648 (Fla. 2d DCA 1977).
*1113 We hold that the following facts which may have been found by the trial court from the testimony before it constituted a sufficient basis for its decision. A truck ordinarily used for the local delivery of beer was observed by police officers going north on U.S. 1 through Marathon, Florida, at about 12:00 midnight. The officers had been informed by inter-office communication that beer delivery trucks were being used for the transportation of marijuana from Key West to the northern part of the United States. One of the police officers concluded that the truck was so suspicious at this time and place that it might well be stolen or might be one of the trucks referred to in the inter-office communication as transporting marijuana.[1] We believe that this was based on a well-founded suspicion. See State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). Immediately upon stopping the truck, the officers saw bales of marijuana and smelled marijuana. Thereupon, the appellant was arrested. A complete search was then made, and the evidence sought to be suppressed was secured.
Based upon the holdings in Porter v. State, 302 So.2d 481 (Fla. 3d DCA 1974); United States v. Harris, 421 F. Supp. 121 (E.D.Pa. 1976), aff'd 565 F.2d 153 (3d Cir.1977); United States v. Harris, 404 F. Supp. 1116 (E.D.Pa. 1975); and cf. United States v. Rocha-Lopez, 527 F.2d 476 (9th Cir.1975), we affirm the decision of the trial judge on the motion to quash and, accordingly, the judgment and sentence are affirmed.
Affirmed.
SCHWARTZ, Judge (dissenting).
I respectfully dissent. In my view, the only two grounds upon which the officers stopped the defendant were insufficient, both individually and collectively, to raise a reasonable suspicion of criminal activity. As to the first, which the majority characterizes as an "inter-office communication that beer delivery trucks were being used for the transportation of marijuana from Key West to the northern part of the United States," the record contains only the following:
Q. Had you read a report forwarded down to the Sheriff Department from the New Jersey Police?
A. Yes, sir.
Q. And did that have anything to do with your suspicion about the beer truck?
A. That was another incident there as well one of the biggest one there we had received intelligence reports in our substation from the Detective Division that there had been possibly a way of transporting narcotics out of Monroe County, there would be used as possibly, beer delivery trucks. [e.s.]
It seems clear that this highly amorphous, hearsay and conclusory report, which did not even identify the source of the information, much less contain indicia of that source's reliability, provides no support at all for the stop in question. See State v. Williams, 371 So.2d 1074 (Fla. 3d DCA *1114 1979); St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978); United States v. McLeroy, 584 F.2d 746 (5th Cir.1978); compare Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979); State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979).
The other and real reason that the truck was pulled over was that, as the officer stated
A. I had never seen a beer truck running through Marathon making deliveries at that time of night, I had never seen a truck, period at that time and I work usually about two weeks out of three on the night shift and I work one week, day shift.
* * * * * *
Q. What are those type trucks used for?
A. Carrying beer and making deliveries to merchants.
Q. Are they used to make deliveries between cities or within the city or within an area or what?
A. They are used to make within the city and between the keys.
Q. The fact that that truck was out that late at night, what if anything did that make you suspicious of?
A. Well, I had an occasion one other time to stop the same type, well not the same type of vehicle but another truck that belonged to the City Electric that was stolen and thinking at that odd hour which I did with the City Electric truck kind of came to my mind, this truck, I had never seen in this vicinity at all before, I don't know of any other beer trucks at this time, delivery trucks such as this.
Q. That you made you think, you were suspicious that it might be a stolen vehicle?
A. It could have been very well stolen or it could be doing other things besides just being stolen.
Q. Did you have any other knowledge that would make you suspicious of the truck at that time?
A. That was about it.
In Coladonato v. State, 348 So.2d 326 (Fla. 1977), our supreme court squarely held that these grounds are likewise insufficient. At 348 So.2d 327, the court adopted the dissenting opinion in the district court of then-Judge, now-Justice Alderman which stated:
I cannot agree that the arresting officer's opinion that the vehicle was an unusual one to be seen in the area gave rise to the necessary `founded suspicion' in this case. I believe the facts of this case bring it more in line with those cases that have invalidated detentions, see, e.g., Bailey v. State, 319 So.2d 22 (Fla. 1975); Thomas v. State, 297 So.2d 850 (Fla.App. 4th, 1974); State v. Rheiner, 297 So.2d 130 (Fla.App. 2nd, 1974); Richardson v. State, 291 So.2d 253 (Fla.App. 1st, 1974), than with those that have upheld them, see, e.g., Gustafson v. state, supra; State v. Ebert, supra; State v. Padilla, 235 So.2d 309 (Fla.App. 3rd, 1970); Carpenter v. Sigler, 419 F.2d 169 (8th Cir.1969); and Wilson v. Porter, supra.
See also Mullins v. State, 366 So.2d 1162 (Fla. 1978); Delp v. State, 364 So.2d 542 (Fla. 4th DCA 1978). On the authority of Coladonato v. State, supra, which I believe conflicts with the majority opinion, I would reverse the judgment under review.
NOTES
[1] The deposition testimony of Deputy Sheriff Bailey included the following:

"A And I got, first saw him after I had been called by Officer Jack Sweeting, who had asked me about, if I had seen any beer trucks out this late at night, you know.
"Q All right.
"A And I told him I had not had an occasion to see an Old Milwaukee truck out this late at night. I had never seen it down in the city. And he told me, "Well, if you do see it, it's coming your way, would you mind pulling it over," you know, check it out, see what's going on.
"Q Okay. What happened then?
"A I stopped the truck.
"Q Why did you stop the truck?
"A Well, because of the reason that we hadn't seen one out that late at night, and we would check it out; see who the driver was.
"Q For what purpose?
"A Well, Jack, from what I understand, something was going, you know. Well, Jack had asked me to pull him over. So I went ahead and pulled him over.
"Q So you pulled him over based solely and strictly on Jack's request to you to pull him over?
"A And the fact that I hadn't seen that kind of truck out that late at night. Plus the fact I had never seen that small of a truck going up the Keys. It's a local delivery truck."