536 So.2d 1125 (1988)
In the Interest of R.E., II, a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1278.
District Court of Appeal of Florida, First District.
December 21, 1988.
*1126 Michael E. Allen, Public Defender, and David P. Gauldin, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., for appellee.
MILLS, Judge.
Appellant, a juvenile, seeks review of the trial court's order withholding adjudication of delinquency and placing him on community control. Appellant pled nolo contendere to misdemeanor charges of possession of cannabis and possession of alcohol by a person under 21 years of age, expressly reserving his right to appeal an adverse ruling on his motion to suppress physical evidence. For the reasons stated below, we reverse.
Appellant was charged with possession of cannabis, possession of paraphernalia, and possession of alcohol by a person under age 21. Appellant entered a plea of not guilty and filed a motion to suppress physical evidence that was seized from him in an alleged illegal stop. No testimony was heard at the suppression hearing. The facts, which were stipulated to by counsel, are as follows.
On September 8 or 9, 1987, C.W. Dias of the Levy County Sheriff's Department received a call from Harold Davis. Mr. Davis reported that he had been in a parking lot in Williston when he observed a meeting between two persons in a late model white automobile and other persons in a blue Pontiac. What appeared to be a key case passed between the cars and the occupants of the blue car opened the trunk of the white car. Although Mr. Davis did not see drugs or money change hands, the behavior of the participants suggested to him that a drug transaction had taken place. Mr. Davis identified the participants as white males and provided a partial license plate number for the white car.
On Saturday, September 12, Mr. Davis phoned the Sheriff's Department and again spoke with C.W. Dias. Mr. Davis stated "[the] distributors are back in action working the area again" but did not describe what he had seen. Only later, at his deposition, did Mr. Davis mention that he had seen the same white car make two or three encounters similar to the one he reported a few days earlier.
Upon receiving Mr. Davis' call, the Levy County Sheriff's Department contacted the Williston Police Department. Officer Lewis of the Williston P.D. received the message to be on lookout for a white Pontiac, tag number CEB-9?U, whose driver might be selling drugs; the fifth digit of the tag number was not provided. A short time later, Officer Lewis observed a white Pontiac, tag number CEB-92U. Although there was nothing to arouse suspicion and the driver was obeying the traffic laws, Officer Lewis stopped the car on the basis of the *1127 message he had received. In addition to the driver's failure to produce a license, Officer Lewis noticed that there were several cans of beer in the back seat and all of the three white male occupants appeared to be under age 21. Before an arrest could be made, Officer Miller arrived on the scene as a backup. Officer Miller noticed something wrapped in a towel under the driver's seat. He removed the towel and discovered a quantity of cannabis. A more complete search was conducted, and more cannabis was found.
Appellant's motion to suppress alleged that the initial stop of the vehicle was illegal because there was no "founded suspicion" that the occupants of the vehicle had committed, were committing, or were about to commit a crime as required by § 901.151, Fla. Stat., and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant added that the evidence must be suppressed as the fruit of an illegal search regardless of the propriety of the initial stop. When the trial court denied the motion, appellant changed his plea to nolo contendere expressly reserving his right to appeal the denial. In return for his plea, the state dropped the paraphernalia charge.
On appeal, the state concedes that the evidence is suppressible if the initial stop was improper. Since we find that the initial stop was not based upon founded suspicion we need not address appellant's claim that the subsequent search was illegal.
Section 901.151, Fla. Stat. (1987), authorizes law enforcement officers to temporarily detain persons when circumstances reasonably indicate that the person has committed, is committing, or is about to commit a crime. The statute has been interpreted as a codification of the federal standard for "stop and frisk" as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). State v. Webb, 398 So.2d 820 (Fla. 1981). To be lawful, a stop must be based upon reasonable or founded suspicion and must not be the product of "bare suspicion." Coladonato v. State, 348 So.2d 326 (Fla. 1977). Although reasonable suspicion should be articulable and based upon objective facts, the facts need not be personally observed by the officer making the stop; rather, it is sufficient if the facts that give rise to the suspicion are communicated to law enforcement through a reliable third party. Webb, 398 So.2d at 825. Thus, a stop can be based upon the contents of a BOLO (be on lookout) which is itself based upon the report of an informant, provided that the information is sufficient to raise a reasonable suspicion.
To determine whether information is sufficient to support a reasonable suspicion, the court must assess the totality of the circumstances known to law enforcement and determine whether an experienced law enforcement officer could draw inferences and make deductions that would raise a suspicion that the individual being stopped was engaged in wrongdoing. Tamer v. State, 484 So.2d 583 (Fla. 1986). The state carries the burden of making this showing. Irons v. State, 498 So.2d 958 (Fla. 2d DCA 1986); St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978).
In the instant case, the state failed to carry its burden of showing that the stop was based upon reasonable suspicion. The state asserts that the officer who received Mr. Davis' information and caused the BOLO to be sent was an experienced law enforcement officer who had processed the information in his own mind. Having made this assertion, however, the state did not allow the officer to testify as to how or why Mr. Davis' report caused him to reasonably suspect that the persons in the white car were selling drugs. Instead, the state asked the trial court to draw its own conclusions as to what an experienced law enforcement officer could reasonably infer or deduce from the facts presented. This is not sufficient.
Even if the officer had testified that the facts were consistent with a drug transaction, a basis for reasonable suspicion would still be lacking. In the instant case, the only facts known to law enforcement were provided by an uncorroborated, though seemingly reliable report which stated: (1) in a parking lot, two persons in a late model white automobile met other persons in a blue Pontiac; (2) a key case passed *1128 between the cars; (3) the occupants of the blue car opened the trunk of the white car; (4) the license number of the white car was CEB-9?U, and (5) a few days later the informant reported that "[the] distributors are back in action working the area again." There was no dispute concerning Mr. Davis' reliability, nor was it questioned that the white Pontiac, license tag number CEB-92U, was the same late model white automobile that Mr. Davis described as having license tag number CEB-9?U.
The state would have us treat the instant case as if Mr. Davis' information pertained to a specific offense. In such a case, reasonable suspicion would be found to exist upon a showing that the informant was reliable and the information contained sufficient detail to identify the suspect. Franklin v. State, 374 So.2d 1151 (Fla. 3d DCA 1979). The instant case, however, involved the report of generalized, allegedly suspicious activity. In such cases, it is necessary to make the additional showing that the information made it reasonable to suspect that a crime had been, was being, or would be committed. This showing was never made.
The absence of some reasonable basis to suspect that crime was afoot makes the instant case comparable to Hall v. State, 366 So.2d 865 (Fla. 4th DCA 1979). In Hall, the police received a report from the manager of a clothing store that two black males were in the store behaving suspiciously; they had been in the store several times during the day but did not seem interested in making a purchase. An officer arrived just as the suspects were leaving the store and driving away. The officer followed the suspects and eventually stopped them without having observed any additional cause for suspicion. Finding this insufficient to constitute reasonable suspicion, the Fourth District reversed the trial court's denial of the motion to suppress. As in Hall, the instant case involves a citizen's claim of suspicious activity that has a minimal objective basis and, except for innocent details of identification, is uncorroborated by law enforcement's subsequent observations. Corroboration of nothing more than innocent details of identification (e.g., a license plate number) assists the state in making the required showing that the information was sufficiently detailed to single out the suspect. It does not, however, create or support a suspicion that crime is afoot, which is essential if a report of generalized, allegedly suspicious activity is to justify a stop. The absence of this suspicion is fatal to the state's position and the trial court's ruling.
Based on the foregoing, the police acted improperly when they stopped appellant's automobile. Since the state concedes that the physical evidence was seized as a result of the stop, the evidence must be suppressed. Accordingly, the conviction and sentence are reversed and the cause is remanded with directions that the trial court enter an order suppressing the evidence seized from appellant.
SHIVERS and WENTWORTH, JJ., concur.