OPINION
Defendant-Appellant, Joseph M. Ciszewski ("appellant") appeals from the judgment of conviction and sentence entered in the Guernsey County Court of Common Pleas after appellant was found guilty of one count of drug abuse/possession of cocaine, in violation of R.C. 2925.11(C)(4)(b), a felony of the fourth degree. Appellant assigns the following as error:
 "THE COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
The following facts are taken from the testimony received at the hearing on appellant's motion to suppress, which hearing was conducted on March 20, 1997.
On November 3, 1996, at approximately 2:00 p.m., the Cambridge Police Department responded to a call from personnel at the Days Inn that three males were causing a disturbance and bothering the help and management. Cambridge police officers Anker and Sours arrived at the Days Inn and were met there by a state highway patrol trooper and police canine trained to detect narcotics. The three officers and canine then proceeded to the front desk of the motel and spoke with the motel manager. The manager told the officers that she suspected the three males who were causing the reported disturbance were staying in room 224. The officers received a key to room 224 and immediately proceeded to that location.
While en route to room 224, Officer Anker testified that he had a "hunch" that drugs were involved" but admittedly could not articulate any reasons to support the "hunch." Instead, at the time, Officer Anker admitted there was no evidence or allegations of alcohol usage, drug usage, intoxication, violence, an emergency situation, physical danger, or any further disturbance since the original dispatch. Nonetheless, Officer Anker testified that he intended to use the key and enter room 224 whether the occupants of same answered the door or not.
As the officers arrived at room 224, they did not detect any voices or disturbance therein. After knocking at the door, the officers heard voices and some feet shuffling. The officers testified that nothing seemed out of the ordinary from these noises.
In response to the officers' knocks and announcement that they were "the police", appellant opened the door to room 224 just enough for the officers to see his face. At this instance, the officers could see no other part of appellant's body or observe any other persons or unusual activity inside the room.
With appellant's face only visible, Officer Anker "pushed the door open" and the officers pulled appellant into the hallway and immediately conducted a "pat down" search. As officer Anker continued to hold the door to room 224 open, the officers observed another male inside the room. The officers then ordered the second male out of the room into the hallway and conducted a "pat down" search of the second male.
Up to this moment, the officers admit that they had no independent evidence of criminal activity or of unusual behavior except for the original dispatch of disorderly conduct. The officers admitted that they had no independent knowledge whether appellant and the second male removed from room 224 were involved in the alleged disorderly conduct.
During the "pat down" search of appellant, the police officer felt a "cigarette package" inside appellant's pocket and removed said package and discovered marijuana therein. The police officers then handcuffed both appellant and the other male. While the officers stood in the hallway holding the door to Room 224 open, they saw a white powdery substance in a box under a table labeled "baking soda". Upon entering the room the officers discovered a substance that was later identified as cocaine.
Appellant filed a timely motion in the Guernsey County Court of Common Pleas seeking to suppress all evidence obtained against him on the basis that the police officers conducted an illegal search and seizure. After hearing the matter, the common pleas court overruled appellant's motion to suppress.
An appeal was timely filed to this court and we subsequently remanded same to the trial court to enter appropriate findings of fact and conclusions of law with respect to its judgment denying appellant's motion to suppress, pursuant to Crim.R. 12(E). The court so entered its findings of fact and conclusions of law and this matter is now before us on appellant's right of appeal.
 I
The first issue before this court is whether the initial detention of appellant and "pat down" search of him was constitutionally permissible. The trial court concluded that the initial detention and "pat down" search were constitutionally allowable because the officers were "proceeding on the basis of disorderly conduct reported to them" and the "pat down" of appellant was a "check for weapons for the safety of the officers." We disagree.
In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Id. at 22. However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph 1 of the syllabus. The standard for reviewing such police conduct is an objective one: "whether the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, supra at 21-22; U.S. v. Wright (CA8 1977), 565 F.2d 486, 489. Stated another way, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." U.S. v. Cortez (1981), 449 U.S. 411, 417.
Based upon this legal standard and the evidence presented to the trial court, we find the officers were justified in approaching room 224 to investigate a complaint of disorderly conduct. As such, it was not improper for the police officers to knock on the door to make an inquiry with respect to the complaint of disorderly conduct. More troubling, however, is the subsequent conduct of the police officers once appellant opened the door to room 224 in response to the police officers' knocks. At the time appellant opened the door just enough to reveal his face, the police officers had no facts or allegations that the alleged disorderly conduct involved intoxication, drugs, weapons, or any other criminal activity. The officers had no independent knowledge that the occupants of Room 224 were involved in the alleged disorderly conduct. Simply stated, the police officers simply could point to no specific or articulable facts that would justify a seizure of appellant once he opened the door.
Nonetheless, the record demonstrates that once appellant opened the door, sufficient only to reveal his face, the police officers "shoved the door open" and pulled appellant into the hallway and immediately placed him against the wall and "patted him down." T. at 49-51.
Although the officers attempt to justify the removal of appellant and the subsequent search of his person by claiming they were concerned for their safety, there is no evidence in this record to support such a belief. Rather, the officers testified there were no facts to support their "hunch" that appellant was involved in criminal activity, or that appellant was armed and dangerous. However, even assuming arguendo that the officers were justified in protecting themselves by conducting an immediate search of appellant, their "pat down" of appellant exceeded the scope of their justification.
It is well settled that a Terry frisk is not a search for evidence; it is only a limited search for weapons. As such, when a police officer engages in a lawful investigative stop, the officer may frisk the suspect if the officer has reasonable grounds to believe that the suspect carries a weapon or otherwise endangers the officers' safety. See Terry supra, and State v.White (1996), 110 Ohio App.3d 347. However, in State v. Evans
(1993), 67 Ohio St.3d 405, 415, the Ohio Supreme Court explained that during a Terry stop, "when an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the objects `size or density' that it could be a weapon."
In this case, the testimony established that during the purported search of appellant for weapons, the officer felt a cigarette package in appellant's pants pocket. There was no evidence that the officer suspected that this cigarette package felt like a weapon or that it contained a weapon. Nonetheless, the officers removed the cigarette package and discovered marijuana inside the package. There was simply no justification for the officers to conduct a full scale search of appellant's person during this alleged investigatory stop. Therefore, the evidence confiscated from appellant during this unlawful search is inadmissible as a fruit of an illegal search.
We now turn our attention to the issue of whether the officers had probable cause to search room 224. The trial court concluded that the search of the room was justified under the "plain view doctrine" because the officers observed from the hallway "baking powder and white powder" that raised the suspicion that the occupants in room 224 were "cooking crack cocaine."
In Coolidge v. New Hampshire (1971), 403 U.S. 443, a plurality of the Supreme Court discussed three requirements needed to invoke the plain view doctrine. Ohio has adopted these requirements.
 In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities." State v. Williams
(1978), 55 Ohio St.2d 82 paragraph 1 of the syllabus.
In relation to the first requirement, we have difficulty concluding that the initial intrusion which afforded the authorities the plain view was lawful. The testimony of Officer Anker indicated that the officers created the plain view by "shoving the door open" when appellant showed only his face and by the officers holding the door open to look inside the room. This is especially apparent when officer Anker testified that he had every intention of entering the room whether or not the occupants of the room responded to his knocks. In relation to the second requirement of the plain view exception, we have difficulty concluding that the evidence discovered inside room 224 was inadvertently discovered. The record indicates that Officer Anker had a "hunch" unsupported by any facts or allegations that there was drug activity in room 224. However, the officers proceeded to that room with a narcotic detecting canine and with the specific plan of entering room 224 with the key that had been provided to them by the motel manager. Accordingly, the State has failed to establish that the evidence seized from room 224 satisfied the plain view exception to a search warrant requirement.
We decline to allow the plain view doctrine to be so twisted as to justify the seizure that occurred in this case. The officers knew at the time they approached room 224 that they had no articulable facts that would support the issuance of a search warrant for that room. Nonetheless, the officers had every intention of conducting a full scale search. The results of these illegal searches cannot be used to justify the means in which the results were achieved.
Accordingly, we hereby sustain appellant's sole assignment of error and reverse the trial court's judgment overruling appellant's motion to suppress.
Therefore, the judgment of conviction and sentence entered against appellant is hereby reversed and vacated and this matter is hereby remanded to the Guernsey County Court of Common Pleas for further proceedings according to law.
By Farmer, J., Wise, P.J. and Hoffman, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of conviction and sentence entered against appellant is hereby reversed and vacated and this matter is hereby remanded to the Guernsey County Court of Common Pleas for further proceedings according to law.