354 So.2d 1244 (1978)
STATE of Florida, Appellant,
v.
Jackie STEVENS, a/k/a Jackie Stephens, Bruce Wayne Mathews, a/k/a Bruce Wayne Matthews, and Curley Anderson, Appellees.
No. 76-2263.
District Court of Appeal of Florida, Fourth District.
February 7, 1978.
*1246 Robert L. Shevin, Atty. Gen., Tallahassee and Marsha G. Madorsky and Joy B. Shearer, Asst. Attys. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Henry Prettyman and Joseph S. Karp, Asst. Public Defenders, West Palm Beach, for appellees.
ALDERMAN, Chief Judge.
This appeal stems from an order of the trial court granting the motion of the defendants to suppress tangible evidence. At issue is the authority of a police officer under the Florida Stop and Frisk Law to stop a motor vehicle and detain its occupants, to arrest the occupants after a brief investigation, and to seize evidence which was in plain view. We reverse.
The evidence came into the hands of law enforcement authorities in the following manner: Officer Ludwig of the St. Cloud police department was on routine patrol on a rainy Sunday night. At about eleven o'clock he saw a pickup truck pulling away from the vicinity of a city supply and equipment yard. He first observed the truck on a dirt road which skirted the enclosure. The patrol car's spotlight showed a set of fresh tire tracks leading from the direction of the supply yard's gateway and continuing along the route taken by the truck. There were no other vehicles in the vicinity, and Officer Ludwig testified that it was unusual to see a truck there at that hour of the night. Furthermore, he knew that wire had been stolen from the same yard on a weekend about a month before.
He followed the truck. Its tailgate was down, and in the illumination of his own headlights the policeman could see coils of wire laid haphazardly in the bed of the truck, partially covered by a piece of cloth. The officer was struck by the fact that the vehicle was weighted down so heavily in the rear that its front end was sticking up in the air at a peculiar angle.
Officer Ludwig stopped the truck after following it a short distance and found the three defendants in the cab. He asked the driver for identification and detained the three men while waiting for a backup unit to arrive. Without touching the cloth which partially covered the truck's load, the officer could see coils of copper wire, wet and muddy, much of it with its insulation burned off. Ludwig subsequently moved the cloth so that he could judge the full quantity of the wire.
Officer Ernst arrived in his patrol car as backup unit within ten or fifteen minutes of the stopping of the truck. The defendants, one of whom was barefoot, and all of whom were rainsoaked and sandy, were locked in the back seat of Officer Ernst's patrol car while Officer Ludwig drove to the gateway of the city yard to make a quick inspection. The three suspects were not told that they were under arrest until Officer Ludwig told Officer Ernest by radio that he had found many signs suggesting their involvement in theft of wire from city property. Tire tracks, still fresh despite the rain, showed that a vehicle had been backed up to the entrance. There were recent footprints on both sides of the fence, and through a gap in the loosely chained gates. The ground bore imprints made by wire coils. In addition, Officer Ludwig found a pair of tennis shoes which he took back with him to Officer Ernst's waiting patrol car, where the barefoot suspect admitted that they belonged to him.
The trial court's order granting the motion of the defendants to suppress tangible evidence contained the following language:
... [W]hen Officer Ludwig . . stopped the vehicle driven by one of the defendants he had not observed the vehicle violating any traffic regulations and did not have probable cause to believe the defendants, or either of them, had committed a felony. To quote the officer he stopped the vehicle "for suspicion of theft"... . [T]he officer . . was without probable cause to stop the defendants and place them under arrest and could not detain the defendants until he found probable cause after an extensive investigation.
We disagree with the court's reasoning.
The right of law enforcement officers to stop and temporarily detain individuals *1247 under certain circumstances is specifically granted by the Florida Stop and Frisk Law, Section 901.151, Florida Statutes (1976).[1] In evaluating Officer Ludwig's reasons for stopping the pickup truck, the trial court applied too rigorous a standard. State v. Bastardo, 347 So.2d 463 (Fla.2d DCA 1977). Circumstances can "reasonably indicate" that a person "has committed, is committing, or is about to commit" a violation of criminal laws or ordinances without necessarily indicating that high probability of guilt which is implied by the term "probable cause." State v. Payton, 344 So.2d 648 (Fla.2d DCA 1977). To justify temporary detention, only "founded suspicion" in the mind of the detaining officer is required. Lewis v. State, 337 So.2d 1031 (Fla.2d DCA 1976); State v. Othen, 300 So.2d 732 (Fla.2d DCA 1974); State v. Ebert, 251 So.2d 38 (Fla.2d DCA 1971). A "founded suspicion" is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. "Mere" or "bare" suspicion, on the other hand, cannot support detention. Coleman v. State, 333 So.2d 503 (Fla. 4th DCA 1976). Mere suspicion is no better than random selection, sheer guesswork, or hunch, and has no objective justification. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Thomas v. State, 250 So.2d 15 (Fla.1st DCA 1971). There will be borderline cases, of course, in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain factors might then be evaluated to determine whether they reasonably suggested the suspect's possible commission, existing or imminent, of a crime: The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge.
Merely driving around town in an out-of-state van, or walking along a street late at night, or looking or pointing at policemen, or pulling out of a parking lot when the police come into view, with nothing more, is insufficient to justify an individual's detention. Coladonato v. State, 348 So.2d 326 (Fla. 1977); Lower v. State, 348 So.2d 410 (Fla.2d DCA 1977); Stanley v. State, 327 So.2d 243 (Fla.2d DCA 1976); Vollmer v. State, 337 So.2d 1024 (Fla.2d DCA 1976). In the present case, however, there were numerous factors which, when interpreted in the light of Officer Ludwig's knowledge of the area and of a previous crime, gave foundation to his suspicion: It was Sunday, and late at night  an unlikely time for movement of legitimate traffic out of the city equipment yard. The truck was loaded in a disorderly manner with materials of a kind that had recently been stolen from the same yard on another weekend. The truck was overloaded so that its front end stuck up in the air. To any reasonable man in Officer Ludwig's position the location of the truck, the tire tracks leading from the city yard, and the haphazardly *1248 located cargo of wire must inevitably have raised a founded suspicion of theft.
The stopping of the truck and the temporary detention of the suspects was justified, and they were detained prior to their arrest no longer than was reasonably necessary to investigate the situation and to establish that there was probable cause for their arrest (in this case a period of thirty minutes or less). State v. Lundy, 334 So.2d 671 (Fla. 4th DCA 1976).
As for the question of search, we hold that there was no search in connection with the tangible evidence which the appellees sought to suppress: Officer Ludwig could see the copper wire in plain view from a place where he had a legal right to be. Lovely v. State, 351 So.2d 1114 (Fla. 4th DCA, 1977); State v. Ashby, 245 So.2d 225 (Fla. 1971); State v. Miller, 267 So.2d 352 (Fla. 4th DCA 1972). The evidence should not have been suppressed.
The Public Defender has filed a suggestion of death of Appellee-Jackie Stevens, a/k/a Jackie Stephens. As a result the State's appeal as to this appellee has been dismissed. As to the remaining appellees, the case is Reversed and Remanded.
CROSS and MOORE, JJ., concur.
NOTES
[1] The paragraphs of Section 901.151 most pertinent to this case are:

(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
(3) No person shall be temporarily detained under the provisions of subsection (2) of this section longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2) of this section, probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, he shall be released.