382 So.2d 763 (1980)
STATE of Florida, Appellant,
v.
W.O.R., a Child, Appellee.
No. 79-1807.
District Court of Appeal of Florida, Second District.
April 2, 1980.
Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
Ellen I. Hoffenberg, Asst. Public Defender, Clearwater, for appellee.
CAMPBELL, Judge.
The state appeals the trial court's order which granted, on grounds of an illegal stop, appellee's motion to suppress certain tangible evidence. We reverse.
The only witness at the suppression hearing was the deputy sheriff who stopped appellee. He testified that as he was travelling south on 34th Street (U.S. 19) in St. Petersburg at 11:30 P.M., on his way back to headquarters to go off duty, he spotted appellee on the east side of the street. The deputy would have continued on but for the fact that he heard two males, accompanied by two or three females, on the other side of the street yelling at appellee. Because he had worked that area for three years and had had numerous contacts with appellee, the deputy turned his cruiser around and pulled up next to appellee to ascertain what the commotion was about. Appellee told the deputy that he did not know why they were yelling at him and that he was on his way home. (The deputy knew, however, that appellee lived ten blocks in the opposite direction.) The individuals across the street were asked if they wanted to file a complaint, but they replied that they did not and the deputy sent them on their way.
When he turned back to appellee, the deputy noticed that he was carrying a camera. The deputy was familiar enough with cameras to recognize that it was worth over $200. He also knew that appellee was sixteen years of age and did not work, lived ten blocks in the opposite direction and had *764 a reputation as a "local thief". The deputy's suspicions were further aroused when appellee stated that a friend had given him the camera and that he did not know how to open it. The deputy asked if he could look at it and appellee handed it over. After examining the camera for a few seconds in an unsuccessful attempt to open it and get the serial numbers, the deputy returned the camera and sent appellee on his way. This encounter lasted no longer than a minute.
When the deputy returned to headquarters, he completed a Field Interrogation Report (F.I.R.) which referred to appellee as a "local thief" and contained a description of the camera. No mention was made of the altercation which prompted the stop. The camera description was subsequently matched with the description of a camera which had been reported stolen. Appellee was then arrested, the camera seized, and a petition for delinquency was filed charging him with grand theft.
Despite the deputy's repeated insistence that he stopped appellee because of the altercation, the trial court found that his testimony "contained so many conflicts that it [was] really difficult to determine what he was stopping for," and concluded that appellee was stopped because he was carrying a camera.
While we have been unable to discern any inconsistencies in the deputy's testimony,[1] we conclude that even if the deputy had, in fact, initially stopped appellee because he had observed him with a camera, he had a founded suspicion for doing so. We have repeatedly held that "founded suspicion" of criminal activity does not have to rise to the level of probability of guilt required for a finding of "probable cause". State v. Payton, 344 So.2d 648 (Fla.2d DCA 1977). Of course, suspicion is more than "random selection, sheer guesswork, or hunch." State v. Stevens, 354 So.2d 1244, 1247 (Fla.4th DCA 1978). Rather, "[a] `founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." Id. In the instant case, it was late at night; appellee was carrying an identifiably expensive camera; and the deputy had had previous encounters with appellee and knew him as a "thief". While we recognize that any one of these facts alone would not have justified the stop, Moorehead v. State, 378 So.2d 123 (Fla.2d DCA 1980); Parker v. State, 363 So.2d 383 (Fla.3d DCA 1978); Vollmer v. State, 337 So.2d 1024 (Fla.2d DCA 1976), together they constituted those specific and articulable facts which justified the deputy's suspicion that appellee was or had been engaged in criminal activity. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Stevens, supra.
For the foregoing reasons, we reverse the order granting the motion to suppress and remand for further proceedings.
BOARDMAN, Acting C.J., and RYDER, J., concur.
NOTES
[1] We assume that the trial court inferred an inconsistency because the deputy had not mentioned the altercation in the F.I.R., nor did he in his deposition testify with as much detail concerning the altercation and his testimony concerning the sequence of the events surrounding the altercation was not in precisely the same order. The deputy explained on cross-examination, however, that he did not feel the altercation was particularly relevant for the purposes of the F.I.R., a form which allows for only a brief description of events observed by the officer. As for his failure to fully explain the details surrounding the altercation at deposition, the deputy pointed out that he was never asked specific questions about it.