403 So.2d 1384 (1981)
M.A.P., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 80-1681.
District Court of Appeal of Florida, Second District.
September 30, 1981.
*1385 Jerry Hill, Public Defender, Bartow, Robert F. Moeller, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant, a juvenile, was charged by petition with the possession of less than twenty grams of marijuana. His motion to suppress the contraband was denied, and he pled nolo contendere to the charge, specifically reserving the right to appeal the denial of his motion to suppress. The trial court adjudicated him to be a delinquent child. We reverse.
At the hearing on the motion to suppress, the arresting patrol officer testified that at 11:30 a.m. on the date of the arrest, he had observed the appellant, who was unknown to him, beside a mailbox in front of a convenience store with a brown paper bag in his hand. The officer recalled that immediately thereafter he saw the appellant drop the bag and run into the store. The officer then circled the block after which he again observed the appellant, who was now walking his bicycle, with a brown paper bag in his hand. At this point the officer stopped the juvenile because he suspected that the bag contained narcotics. The officer specifically testified that he did not believe that the bag contained anything other than narcotics and that there was nothing about the appellant that made him fear for his life. Once he had stopped the appellant, the officer did not ask appellant for his identity nor did he ask appellant his purpose for being in the area. Rather, he asked the appellant to place the bag on the hood of the police car and remove its contents. Appellant removed some items of clothing and said that was all there was in the bag. However, the officer persisted in his request that appellant empty the bag completely. At that point appellant complied and three baggies of marijuana, which appellant was later charged with possessing, fell out. In his further testimony the officer explained that approximately three or four days prior to this event an unknown individual dropped a brown paper bag at the same corner after which he ducked behind a building. On that occasion the officer retrieved the abandoned bag and found that it contained twenty-seven baggies of marijuana.
The trial court found that the appellant did not consent to the emptying of the contents of the bag. That finding is supported by the evidence and we, of course, do not disturb it. After making that finding, the court went on to rule that the stop of appellant was proper and "because the stop was legal the subsequent search was not unreasonable nor illegal."
The appellant disputes that ruling by first contending that the officer was not justified in stopping him and that, therefore, the evidence seized after the illegal stop was tainted and should have been suppressed. Appellant correctly notes that under our "stop and frisk" law a law enforcement officer must have a founded suspicion that a person has committed, is committing, or is about to commit a crime before he may lawfully detain such person. § 901.151, Fla. Stat. (1979); State v. Stevens, 354 So.2d 1244 *1386 (Fla. 4th DCA 1978). "A `founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." State v. Stevens at 1247. While the appellant's actions alone may not have provided a founded suspicion, we believe that those facts coupled with the officer's knowledge concerning the previous offense at the same location did give rise to a founded suspicion. We believe that the initial investigatory stop was proper and we disagree with appellant's contentions to the contrary.
Appellant's second contention is that, assuming the stop was justified, the compelled emptying of the bag was not. Appellant argues that, for this reason, the marijuana should have been suppressed. We agree with this contention.
A frisk or pat-down incident to an investigatory stop may be conducted  but only where a law enforcement officer has a reasonable belief that the person detained is armed with a dangerous weapon and therefore offers a threat to the officer or another person. § 901.151(5), Fla. Stat. (1979); State v. Webb, 398 So.2d 820 (Fla. 1981). Furthermore, any such frisk of a detainee conducted after a stop is limited in scope and is only permissible to the extent necessary to disclose and for the purpose of disclosing the presence of a weapon. § 901.151(5), Fla. Stat. (1979). We note that the permissible scope of a frisk may extend to a container, such as a woman's handbag, under appropriate circumstances. Dawson v. State, 40 Md. App. 640, 395 A.2d 160 (1978).
The facts in the instant case failed to provide the officer with a reasonable belief that the appellant was armed. In fact, the officer candidly admitted that he did not believe appellant possessed a weapon or in any way posed a threat to his life. Under these circumstances, the officer could not legally conduct the frisk. The officer testified that he did not believe the bag contained anything other than narcotics. Clearly, the officer's insistence on seeing the contents of the bag was not done for the purpose of discovering a weapon.
The state appears to suggest that the compelled emptying of the paper bag was permissible as a search incident to appellant's arrest. A warrantless search incident to an arrest is lawful if the officer has probable cause to arrest before he conducts the search. Dixon v. State, 343 So.2d 1345 (Fla.2d DCA 1977). As we noted in Dixon, the test enunciated by our supreme court to determine probable cause to arrest is whether "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed." Dixon at 1348. While, as noted previously, we believe the officer had a founded suspicion to justify his investigative stop of the appellant, we do not believe that the facts in this case provided the officer with probable cause to arrest.
Based on what we have said, we find the contraband was illegally seized. Accordingly, the order adjudicating appellant to be a delinquent child is reversed. The case is remanded with directions that the trial court enter an order suppressing the evidence seized from appellant and for further proceedings consistent with this opinion.
REVERSED and REMANDED with directions.
DANAHY and CAMPBELL, JJ., concur.
OTT, Acting C.J., dissents with opinion.
OTT, Acting Chief Judge, dissenting.
I dissent, not because I think the police officer acted wisely and reasonably (which I do), but because the trial court, acting well within the bounds of its discretion, thought so. I would affirm the ruling of the trial court and add a "well done" for the officer. He does good work.
We hire intelligent police officers and train them to be observant, to look for the small tell-tale signs of illegal activity, such as furtive movements, guilt-ridden demeanor and odd behavior  clues the untrained *1387 observer would either not notice or would deem inconsequential. But when an officer's honed instincts tell him something peculiar is going on, and he smells illegality in the very air, we forbid him from pursuing the matter unless, at that precise moment of merely "aroused suspicion," he has probable cause to arrest the suspect.
True, we permit him to detain and interrogate the suspect, provided he has a "founded suspicion" that a criminal act has occurred, is in progress or is about to occur, but the only searching we permit is for the limited purpose of ascertaining whether the suspect is armed.
I sincerely wish that someone would explain to me what was wrong with what the officer did in this case. Under circumstances found to be sufficiently suspicious to justify stopping the boy, what in the world was objectionable about looking into the paper bag? After all, it was the suspect's conduct with respect to that bag that aroused the officer's interest in the first place. He had observed the same brown bag "drop" and "pick up" scenario before and found it to be the means of delivering marijuana. It isn't as though the officer used his "founded suspicion" as a pretext for stopping the suspect and then pawed through the boy's possessions on a fishing expedition. As a matter of fact, I would be much more apt to fault an officer, under identical circumstances, for not checking the contents of the bag. I am compelled to add, with no thought of suggesting that ends justify means, that the officer's suspicions proved to be well warranted.
It seems to me that some of the new rules devised to protect or effectuate constitutional guaranties of freedom are unduly academic. I am by no means in the ranks of those who castigate the courts for "coddling criminals." I am satisfied that no rule formulated by any appellate court in this land was ever intentionally designed to make it easier for criminals to evade their just deserts. The problem confronting the courts is that it is simply impossible to safeguard the liberty of law-abiding citizens and simultaneously deny protection to those accused but not yet finally convicted of crime. In truth, not until one is accused of illegal conduct do those constitutional guaranties become at all important.
But that is not to say that courts have infallible wisdom or perception. Sometimes their motives are laudable but their methods are unfortunate.
There is no such thing as absolute freedom in today's complex society. No one has completely unfettered liberty. Every reasoning person expects to sacrifice a measure of his personal freedom, not only in order that his neighbor enjoy equal rights, but for his own benefit and protection. It is unrealistic to exclude that spirit of compromise from the rules governing our law enforcement agencies.
The key to that compromise lies in the use of the word "unreasonable." Not every search or seizure is an invasion of privacy, only those that are unreasonable. What is reasonable is going to vary from case to case. In the instant case, I can find noting unreasonable in the actions of the police officer. More aptly, I am unable to say that the trial judge abused his discretion in ruling that he, supposedly the trier of fact, found nothing unreasonable in the officer's conduct.
This would be a wonderful world if there were no crime, no need for police officers and no such thing as a search or seizure. But there is crime, increasingly, and we hire efficient police for our protection, it isn't us against the police, but us against the criminals, and the police are but our soldiers in that war. Surely we know by now what happens when troops are committed to battle with their hands tied.
No one disputes that an honest person should not be required to suffer the embarrassment or even the inconvenience of an arbitrary search of his person or property. But if his behavior, though innocent, reasonably suggests illicit activity, and he is at all interested in preventing or curbing crime, he will compromise his personal freedom (or privacy) somewhat if his greater goal is to be attained. No innocent person fears or is outraged by courteous, reasonable *1388 and justified interrogation or investigation by a police officer. Every intelligent person knows that the officer is simply doing, as efficiently as possible and as thoroughly as necessary, the job we hired him to do.
It is all very well to pursue pure freedom in ivory-tower meditation, and I most heartily subscribe to the proposition that individual freedom must be as pure as practicality permits, but let's not lose sight of the limiting factors imposed by the real world.