DAUKSCH, Chief Judge,
dissenting:
I respectfully dissent.
In my opinion, this is a ease to be decided under our Stop and Frisk Law, section 901.-151, Florida Statutes (1979), which in pertinent part reads, with emphasis supplied:
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.

(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
(6) No evidence seized by a law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).
The facts of this case are that Orange County deputies on patrol went to a “topless” bar to see if a county ordinance forbidding lewd conduct was being violated. While there they saw appellant, an Outlaw Motorcycle Gang member, and his comrade, also an Outlaw, acting in a suspicious fashion. They were persistently staring at the deputies. When the deputies left the bar the two Outlaws left, one preceding the deputies, one following, them. There were four deputies and two Outlaws. At least one of the deputies knew at least one of the Outlaws, and the deputies knew, as we all do, that the Outlaws are frequently armed. *1085 The testimony at the suppression hearing consisted only of depositions of officers which we have read just as did the trial judge.
In reading the evidence, it is clear none of the deputies, no one, had any reason to believe appellant had “committed, is committing or is about to commit a violation” of law. Thus the deputies had no lawful right to require appellant to stop. It is urged by the state that the deputies knew Outlaws carry weapons, often concealed firearms, thus they .had a right to stop because carrying concealed firearms is unlawful. This is a bootstrap argument; one which would have us justify the search by its fruits — they suspected a firearm, searched for one, found one, thus the search was constitutionally valid. No, they cannot stop unless they have reason to believe a violation of law is involved. Not a mere suspicion. The deputies needed to have a founded suspicion; “a suspicion which has some factual foundation in the circumstances observed by the [deputies], when those circumstances are interpreted in the light of the [deputies’] knowledge.” State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). See also Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980); Lacks v. State, 366 So.2d 1223 (Fla. 4th DCA 1979).
In addition to the fact that the stop was not proper, I also must say the search was illegal. As the statute says, only when the officer has probable cause to believe the person is armed may he search him. Here the deputies did not testify to any cause to believe appellant was armed, except that all Outlaws are usually armed and one deputy had heard defendant had been previously found armed. (It turned out he was really found armed the next day according to a deposition statement.) That is insufficient evidence to support a search. The deputies testified the reason they searched appellant and his comrade was because they were afraid of them. That is not a legal reason to search. It is a very practical and obviously an intelligent reason but not one which allows the fruits of the search to be introduced into evidence at trial. If the courts approved a search based upon fear, then all a police officer would have to do to justify all of his searches would be to say he was afraid. Even if we approve a “reasonable” fear basis for search then almost as many searches would be upheld. This is especially true in this case; these two motorcycle gang members who purposely dress and conduct themselves in a fashion to elicit fear and scorn could hardly be heard to complain when they are met in the middle of the night outside a bar. In summary, there was no lawful stop and no lawful frisk search. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
“Outlaws” as well as outlaws (criminals) are entitled to the constitutional guaranties all persons enjoy. In fact, it is only when searches are fruitful that the courts are called upon to enforce this paramount constitutional law. Police must obey the constitutional law as well as enforce the statutory law.
I would reverse.