GLICKSTEIN, Judge,
concurring specialty-
As a result of this case, I took a long look at the “laundry list” in State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978), wherein the court said in discussing an officer’s right to make a stop pursuant to section 901.151, Florida Statutes:
There will be borderline cases, of course, in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain factors might then be evaluated to determine whether they reasonably suggested the suspect’s possible commission, existing or imminent, of a crime: The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer’s knowledge.
Id. at 1247.
In this case there was a stop; and we have affirmed the non-forfeiture of the vehicle which appellant was driving because the stop was legally indefensible. The viability of the laundry list, in my view, hinges upon the existence or nonexistence of the last item on the list. A late member of the Bar wisely observed that in order to make lemonade, you need lemons. The last item on the list is the lemon; and everything else is sugar and water without it. In Stevens, the officers on patrol saw a pickup truck pulling away from a city supply and equipment yard on a rainy Sunday *611 night, loaded down so heavily with wire, and perhaps other items, to make the truck’s front end stick up in the air at a peculiar angle.
Here, in the early morning hours of August 19, 1984, Officer Kenneth Barone of the Pompano Beach Police Department observed a 1984 Toyota pickup truck traveling eastbound, driving slowly in front of him. The vehicle was not violating any traffic laws. In the back of the truck, Officer Barone observed a large container, a bicycle, and a white male. He stayed behind the truck and observed the passenger in the back of the truck knock on the window to alert the driver to something, at which point the vehicle slowed further. This raised a suspicion in the officer’s mind that the occupants had committed or were about to commit a crime. Officer Barone did not recall receiving any BOLO’s or other warnings for burglaries or stolen bicycles in the previous hours; however, in the preceding month he had received reports of larcenies of bicycles and other property in that section of town.
The officer pulled the truck over and approached it on foot. He found appellee in the passenger seat, another man in the driver’s seat and a third man in the back. The men produced identification, revealing appellee to be the owner of the truck. Officer Barone shined his flashlight into the interior of the vehicle and observed on the dashboard a matchbook cover and a small clear plastic bag containing a white substance he believed to be cocaine. The occupants of the vehicle were placed under arrest and the vehicle was impounded.
We do not have the “lemon” in this case with which to make lemonade.
Defense counsel here has provided us with what he describes as “the California Walkman case”; Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), which was provided as a result of my concern, expressed at oral argument, with the laundry list in Stevens, given the city’s arguments here as to the “totality of circumstances.”
On reading the Kolender case, the writer perceives its value to be, for our purposes in this case, in one of the justice’s expressions, rather than the holding of the court. The court struck down a California statute, which required persons who loiter or wander on streets to provide “credible and reliable” identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Justice Brennan’s concurrence states:
It has long been settled that the Fourth Amendment prohibits the seizure and detention or search of an individual’s person unless there is probable cause to believe that he has committed a crime, except under certain conditions strictly defined by the legitimate requirements of law enforcement and by the limited extent of the resulting intrusion on individual liberty and privacy. See Davis v. Mississippi, 394 U.S. 721, 726-727, 89 S.Ct. 1394, 1397-1398, 22 L.Ed.2d 676 (1969). The scope of the exception to the probable-cause requirement for seizures of the person has been defined by a series of cases, beginning with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), holding that a police officer with reasonable suspicion of criminal activity, based on articulable facts, may detain a suspect briefly for purposes of limited questioning and, in so doing, may conduct a brief “frisk” of the suspect to protect himself from concealed weapons. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 880-884, 95 S.Ct. 2574, 2579-2580, 2581-2582, 45 L.Ed.2d 607 (1975); Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 1922-1923, 32 L.Ed.2d 612 (1972). Where probable cause is lacking, we have expressly declined to allow significantly more intrusive detentions or searches on the Terry rationale, despite the assertion of compelling law enforcement interests. “For all but those narrowly defined intrusions, the requisite ‘balancing’ has been performed in centu- *612 ríes of precedent and is embodied in the principle that seizures are ‘reasonable’ only if supported by probable cause.” Dunaway v. New York, 442 U.S. 200, 214, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979).
Terry and the cases following it give full recognition to law enforcement officers’ need for an “intermediate” response, short of arrest, to suspicious circumstances; the power to effect a brief detention for the purpose of questioning is a powerful tool for the investigation and prevention of crimes. Any person may, of course, direct a question to another person in passing. The Terry doctrine permits police officers to do far more: If they have the requisite reasonable suspicion, they may use a number of devices with substantial coercive impact on the person to whom they direct their attention, including an official “show of authority,” the use of physical force to restrain him, and a search of the person for weapons. Terry v. Ohio, supra, 392 U.S., at 19, n. 16, 88 S.Ct., at 1879, n. 16; see Florida v. Royer, 460 U.S. 491, 498-499, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (opinion of WHITE, J.); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). During such an encounter, few people will ever feel free not to cooperate fully with the police by answering their questions. Cf. 3 W. LaFave, Search and Seizure § 9.2, pp. 53-55 (1978). Our case reports are replete with examples of suspects’ cooperation during Terry encounters, even when the suspects have a great deal to lose by cooperating. See, e.g., Sibron v. New York, 392 U.S. 40, 45, 88 S.Ct. 1889, 1893-1894, 20 L.Ed.2d 917 (1968); Florida v. Royer, supra, 460 U.S., at 493-495, 103 S.Ct., at 1321-1322.
The price of that effectiveness, however, is intrusion on individual interests protected by the Fourth Amendment. We have held that the intrusiveness of even these brief stops for purposes of questioning is sufficient to render them “seizures” under the Fourth Amendment. See Terry v. Ohio, 392 U.S., at 16, 88 S.Ct., at 1877. For precisely that reason, the scope of seizures of the person on less than probable cause that Terry permits is strictly circumscribed to limit the degree of intrusion they cause. Terry encounters must be brief; the suspect must not be moved or asked to move more than a short distance; physical searches are permitted only to the extent necessary to protect the police officers involved during the encounter; and, most importantly, the suspect must be free to leave after a short time and to decline to answer the questions put to him.
“[T]he person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.” Id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring).
Failure to observe these limitations converts a Terry encounter into the sort of detention that can be justified only by probable cause to believe that a crime has been committed. See Florida v. Royer, 460 U.S., at 501, 103 S.Ct., at 1326 (opinion of WHITE, J.): id., at 509-511, 103 S.Ct., at 1330 (opinion of BRENNAN, J.); Dunaway v. New York, 442 U.S., at 216, 99 S.Ct. at 2258.
461 U.S. at 363-65, 103 S.Ct. at 1861-62, 75 L.Ed.2d at 912-14 (Footnotes omitted).