696 So.2d 1271 (1997)
Michael JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1457.
District Court of Appeal of Florida, Fifth District.
July 3, 1997.
*1272 James B. Gibson, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, Judge.
Officer Janowski of the Sanford Police Department responded within "three to five minutes" to a call which reported that a shot had been fired at a certain Sanford intersection at 1:30 a.m. On his way to the intersection, the officer observed Michael Johnson, appellant herein, and another person walking along a sidewalk some four blocks from the intersection where the shot was fired. The officer proceeded to the intersection. Finding nothing unusual there, he immediately returned to the two individuals he had encountered a few minutes earlier. They were the only people that the officer saw in the area where the shooting occurred.
The officer approached the two men and asked if they had heard a shot fired only a short time before. This, undoubtedly, was a consensual encounter. They responded that they had not. When the officer, from the glow of the street light, observed that Johnson had a large "bulge" on his right hip which, although covered by his pulled-down sweater, looked "similar to" the bulge made by his own .9 millimeter automatic, the officer, fearing for his safety and the safety of others, told Johnson to raise his hands. At this point, the consensual encounter became a Terry stop.[1] While Johnson's hands were up, the officer reached under his sweater and removed a large caliber revolver, the handle of which could be seen above Johnson's waistband after the sweater was lifted.
Johnson was convicted of possession of a firearm by a convicted felon. He appeals on the basis that the court erred in not suppressing the evidence because the officer "searched" him before he had a well-founded suspicion of criminal conduct, or in the alternative, before a pat-down revealed the likelihood that the bulge was a firearm. We affirm.
*1273 Although our case is distinguishable from A.H. v. State, 693 So.2d 89 (Fla. 3rd DCA 1997), the facts are sufficiently similar to warrant further discussion. In A.H., officers discovered a stolen vehicle abandoned in the middle of an intersection with its doors open, its engine running and its horn blowing at 3:00 a.m. A search of the area revealed A.H. and other juveniles walking away from the scene (about three or four blocks from the stolen vehicle) in an area that had no residences within walking distance. The officers stopped the juveniles, separated them for interrogation (Miranda warnings were given), and arrested A.H. when his companion admitted that the car had been stolen by A.H. On appeal, the court found that the officers lacked a founded suspicion to justify the stop and suppressed the evidence.
The major distinction between A.H. and our case is that in our case the officer observed the suspicious bulge before the search. In evaluating whether there was a "reasonable suspicion" to justify the stop (and the resulting security search), we must consider "the totality of the circumstances  the whole picture"[2] "as interpreted in light of the officer's knowledge."[3]United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978).
As the United States Supreme Court explained in Cortez:
[The concept of reasonable suspicion] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same  and so are law enforcement officers.
449 U.S., at 418, 101 S.Ct. at 695.
In our case, the officer, who had over nine years of police experience, knew that a criminal activity, the firing of a shot at a municipal intersection, had just taken place. A general view at the shooting scene (even though not an exhaustive search) revealed only two individuals in the area. It was, after all, 1:30 in the morning. The time and location of their sighting are important factors to be considered by the officer because it placed the individuals within that class of people who "could have" committed the offense. If, from the officer's experience, he believed that the sound of a shot should have been heard by the individuals, he might reasonably have concluded that the men were being untruthful when they denied hearing it. An experienced officer would also know that one would not dispose of a weapon merely because it was fired in public and that to dispose of a weapon in the presence of police officers would probably be impractical. Therefore, he could conclude that if these individuals were involved in the shooting, there was a likelihood that they would still be armed. Knowing this, the officer observed that one of the individuals had something in his waistband that created a "bulge" similar in appearance to the officer's own firearm. We believe that based on the totality of the circumstances as interpreted in light of the officer's knowledge and experience, the officer was justified in believing that his observations suggested Johnson's possible commission of a crime, and authorized him to *1274 make the stop and execute the search. See State v. Stevens, supra.
Johnson relies on Sholtz v. State, 649 So.2d 283 (Fla. 2d DCA 1995). We find Sholtz distinguishable. In Sholtz, although the officer was directed to a "high crime area", he was not informed about the nature of the complaint or a description of anyone engaged in an illegal activity. He merely saw Sholtz standing near a pay phone with a "bulge" in his front pocket. The officer conducted a patdown and, although the bulge turned out to be only wadded up money, Sholtz pulled a cocaine pipe out of another pocket. Sholtz held that the evidence should have been suppressed because the officer lacked a well-founded suspicion that Sholtz was engaged in a criminal activity; the patdown was therefore unlawful. We find, however, that in the instant case, where the officer was dispatched to a location at which a shot had been fired at 1:30 a.m. and observed only two individuals in the vicinity close enough to have been at the scene of the shooting at the time a shot was fired (and who denied having heard the shot), and further observed that one of the individuals had a bulge in his waistband that looked similar to a bulge made by a firearm, he had reasonable suspicion that the two were or had been engaged in illegal activity. Further, since the officer was responding to the scene where a shot had been fired, it was reasonable to believe that, of the only two individuals he saw in the vicinity, the one who had a bulge in his waistband might well be armed.
There are cases which hold that a search beneath clothing is unauthorized unless a patdown of outer clothing is first conducted which indicates the presence of a concealed weapon. See Jamison v. State, 455 So.2d 1112 (Fla. 4th DCA 1984). The rationale is that a patdown might reveal that a bulge is soft and could not be a weapon. For that reason, it has been held in some situations that an officer who directly seizes a weapon from beneath a defendant's clothing without first conducting a patdown has gone beyond the minimum search necessary to disclose whether a weapon is present. We prefer, however, the reasoning of the court in State v. Hernandez, 658 So.2d 620, 621 (Fla. 3d DCA), rev. denied, 666 So.2d 143 (Fla. 1995), which held that "since the officer lifted the shirt at the exact spot where he observed a bulge and where he believed a weapon to be concealed, the search was limited in scope and conducted only to the extent necessary to disclose the weapon and secure the officer's safety." See also Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
On Johnson's issue relating to the assessment of points for possession of a firearm when the sole offense is possession of a firearm by a convicted felon, we are bound by Smith v. State, 683 So.2d 577 (Fla. 5th DCA 1996).
AFFIRMED.
GRIFFIN, C.J., concurs in result only.
THOMPSON, J., concurs specially, with opinion.
THOMPSON, Judge, concurring specially.
Although this is a close question, I agree with the reasoning and result reached based on the circumstances surrounding the encounter, and the principle that the trial court's ruling comes to this court with a presumption of correctness and must be interpreted in a manner most favorable to sustaining the trial court's ruling. McNamara v. State, 357 So.2d 410 (Fla.1978). I write only to signal behavior by officers that is becoming, in my opinion, pervasive as a method to circumvent the requirement of founded suspicion or probable cause.
The facts of this case are well stated in Judge Harris' opinion, but I would add that, after the officer spoke with Johnson and his companion, the officer noticed the bulge, unsnapped the strap to his handgun, placed his hand on his weapon and ordered the two men to raise their hands for his "safety and theirs." The use of the subjective fear on the part of an officer is becoming a substitute for probable cause. The officer in this case was investigating a gunshot when he spoke with Johnson and his companion, so his concern was justified. State v. Hall, 652 So.2d 484, 485 (Fla. 5th DCA 1995). Officers should be cautioned, however, that an inquisitive *1275 nature and a concern for officer safety will not replace the minimum founded suspicion or probable cause requirements established by Florida's Stop and Frisk Law. See § 901.151, Fla. Stat. (1995). See also Smith v. State, 592 So.2d 1206, 1208 (Fla. 2d DCA 1992) (holding that a patdown for weapons for the officer's safety will not vitiate an unlawful detention).
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989), holds that, "reasonable suspicion" is a less demanding standard than that for probable cause, and "considerably less than proof of wrongdoing by a preponderance of the evidence."

The Sokolow Court has also said:
The concept of reasonable suspicion, like probable cause, is not "readily, or even usefully, reduced to a neat set of legal rules." ... In evaluating the validity of a stop such as this, we must consider "the totality of the circumstances  the whole picture." ...
Id. (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)).
[3] "There will be borderline cases ... in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain factors might then be evaluated to determine whether they reasonably suggested the suspect's possible commission, existing or imminent, of a crime: The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge." State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978).