SMITH, LARRY G., Senior Judge,
dissenting.
The majority’s recitation of the facts of the case is only partially complete, and does not take into account the chronology of events as they unfolded during the unusual incident which ultimately resulted in appellant Del-prado’s arrest for possession of cocaine.
At the suppression hearing, officer Castell testified that while on patrol she was called to the hospital by an off-duty policeman who asked for help, reporting initially that there was a shooting involving four people who were in an automobile.[1] Either before or on arrival at the hospital, Castell was informed that the vehicle was involved in a shooting on Southwest 87th Avenue, and 39th Street and at the hospital she was directed to Delprado, who was uninjured, and another uninjured person who was supposedly in the car, both covered with blood. Some 14 additional police officers had assembled at the hospital in response to the call for help. Castell testified that they were trying to determine “what really happened,” explaining that there was a problem in determining what happened because “nobody would say what happened ... nobody would cooperate.” The officers were provided information that the address given for the shooting was wrong; “it was bad information,” in Castell’s words. At that point, officer Castell was instructed by her sergeant to separate Delprado and the other unharmed individual. Castell and officer Jackson did this by moving with Delprado to a separate room, where Delprado was told to wash the blood from his hands. After separating Delprado, Castell said, he would not cooperate in the investigation, and “we didn’t know what was going on, so I had to handcuff him for my own safety.”[2] The officer *1101 further testified that although she saw nothing to indicate that Delprado had a weapon, Delprado was covered with blood, and they “didn’t know what was going on.” She conducted no pat-down search because she did not want to expose herself to the blood, and she had no gloves for protection.
While it is correct to say that there was no evidence that Delprado carried a firearm or other weapon, it is not entirely correct that Delprado was not “behaving in a disruptive manner,” as the majority states. In his testimony, Delprado describes his own behavior: “I was in shock. I was nervous. I had blood on me. I had all this trauma. I had my cousin in the hospital wounded in the head. I was nervous. I said nothing. I was in shock. I was freaking out.”[3]
In addition, officer Castell repeatedly stated in her testimony that Delprado was uncooperative, refusing to answer questions about what happened, which Delprado freely admitted in his suppression hearing testimony. Delprado did give his name, according to Castell, as Delprado admitted, and he also consented to the officer’s retrieval of his wallet from his trousers, which he denied at the hearing.
In light of the additional testimony as referred to above, I am unable to agree that the temporary detention, handcuffing, and request for identification were unlawful. In reviewing search and seizure rulings, factual decisions by the trial court “are entitled to deference commensurate with the trial judge’s superior vantage point for resolving factual disputes.” State v. R.R., 697 So.2d 181, 182 (Fla. 3d DCA 1997). The objective facts here are sufficient, in my view, for the trial court to conclude that the officers reasonably formed a well-founded suspicion that Delprado had been engaged in criminal activity. Even if entirely unexplained, the existence of the two gunshot victims in itself established a strong probability of criminal conduct by someone;[4] and Delprado’s bloody condition and the information that he was in the car in which the shootings occurred placed him at the scene of the criminal conduct. Cf. Johnson v. State, 696 So.2d 1271 (Fla. 5th DCA 1997)(sighting of two suspects four blocks from intersection where a shot was reportedly fired placed them within class of individuals who “could have” committed offense). Because of the incorrect information regarding the location of the shooting and Delprado’s refusal to cooperate by explaining the circumstances of the shooting, officer Castell, with four years experience on the police force, might reasonably have concluded that Delprado was himself involved in criminal activity leading to gunplay, rather than being an innocent victim. Delprado’s uncooperativeness, coupled with his bloody condition and his erratic, “freaked out” behavior clearly justified his temporary detention and handcuffing while the officer sought identification. See Harper v. State, 532 So.2d 1091 (Fla. 3d DCA 1988). For these reasons, I would defer to the trial court’s evaluation of the facts and affirm.

. The injured victims were a three-year-old child, and an adult male who had been shot in the head and was unconscious.

. Q. "Why did you feel that your safety was an issue?”
A. "Because here we have somebody almost in critical condition, a kid got shot and nobody *1101 would explain what really happened, so I felt it was time to handcuff him for my own safety and the other officer.”

. The trial court questioned the argument by defense counsel below that officer safety justifying temporary detention and handcuffing was not at issue when, as the court stated, "someone is covered with blood and freaked out, in this own words?”

. This fact is so event that the Florida Legislature has made it a criminal offense for physicians and hospital personnel to fail to report gunshot wounds to the Sheriff for investigation. § 790.24, Fla. Stat. (1997).